# FAIRCHILD HEIGHTS, INC. *v.* ROSEANN AMARO

# FAIRCHILD HEIGHTS, INC. *v.* DEENA AIKEN ET AL.
## (SC 18305)

Norcott, Palmer, Vertefeuille, Zarella and McLachlan, Js.

1

Argued April 30—officially released August 11, 2009

*Thomas T. Lonardo,* for the appellant (plaintiff).

*Thomas J. Welch,* with whom were *Ramon S. Sous* and *John H. Welch, Jr.,* for the appellee (city of Shelton).

*Matthew J. Willis* filed a brief for the Connecticut Manufactured Housing Association, Inc., as amicus curiae.

*Opinion*

NORCOTT, J. In this appeal, we consider whether a municipal tax lien on a mobile home was extinguished when that mobile home was determined to have been abandoned and then sold at a public auction pursuant to General Statutes § 21-80 (e).[1] The plaintiff, Fairchild

---

[1] General Statutes § 21-80 (e) provides: "(1) If (A) a judgment for possession has been entered against the resident and all occupants of a mobile manufactured home pursuant to chapter 832 and this section; (B) no rent or other payment has been received for the use and occupancy of the lot upon which the mobile manufactured home is situated for at least four months; (C) at least sixty days have passed since the expiration of the last stay of execution pursuant to chapter 832 and this section; and (D) notwithstanding the provisions of section 47a-42, the mobile manufactured home remains upon the lot, the owner of the mobile manufactured home park may initiate a petition to the Superior Court pursuant to this section. Such petition may be brought as a supplemental proceeding in the summary process action, in which case no additional entry fee shall be required.

"(2) The petition shall allege the acts specified in subdivision (1) of this subsection and, in addition, shall allege supporting facts which demonstrate that the owner of the mobile manufactured home has failed or refused to make reasonable efforts to remove the home from the lot or to sell the home in place or that, in spite of reasonable efforts to locate the owner of the mobile manufactured home or such owner's representative, the owner of the mobile manufactured home park has been unable to locate such owner. Reasonable efforts to locate the owner of the mobile manufactured home shall include, but not be limited to, reasonable inquiry of relatives or associates of the owner of the home, if known to the owner of the park, and of other residents of the park.

"(3) A copy of the petition and the notice of the hearing on the petition shall be given to the owner of the mobile manufactured home, the municipality and all lienholders who have recorded a lien against the mobile manufactured home or of whom the owner of the mobile manufactured home park has actual knowledge. Notice to the municipality and to lienholders shall be by certified mail. Notice to the owner of the mobile manufactured home shall be designed to maximize the likelihood that the owner will receive actual notice of the petition, without regard to whether the owner appeared in the summary process action. Such notice to the owner of the mobile manufactured home shall be conspicuously posted at the entrance to the mobile manufactured home and also sent by certified or registered mail, return receipt requested, to the owner of the mobile manufactured home and to the attorney, if any, who appeared for such owner in the summary process action. Notice to the owner of the mobile manufactured home shall be sent to such owner at the owner's last-known address and also to such owner in care of any other person reasonably believed to know the location of the owner. The court may require supplemental notice if it finds that additional

Heights, Inc., appeals[2] from the judgments of the trial court denying its motion for an order conveying good title to, and a release of all liens upon, two abandoned mobile homes in the plaintiff's mobile manufactured home park. On appeal, the plaintiff claims that the judgments of the trial court were improper because the language of § 21-80 (e) (4) clearly and unambiguously provides that all existing liens on the mobile homes, including the municipal tax liens held by the city of Shelton (city), were extinguished upon the court-ordered sale of the mobile homes. We agree and, accordingly, we reverse the judgments of the trial court.

notice is likely to result in actual notice to the owner of the mobile manufactured home.

"(4) At the hearing on the petition, the court shall determine whether all the requirements of subdivisions (1), (2) and (3) of this subsection have been satisfied and, if they have, shall also determine whether the home has been abandoned. If such requirements have been satisfied and such home has been abandoned, the court shall order the owner of the mobile manufactured home park to conduct a public sale of the home. Nothing in this section shall preclude the court from deferring the entry of an order requiring sale and from issuing other appropriate orders, if the court finds that, within a reasonable period of time, the owner of the mobile manufactured home will remove the home from the lot or dispose of the home by sale or will make other appropriate arrangements with the park owner. The order directing sale shall require notice which includes a conspicuous statement that the sale will extinguish all previous ownership and lien rights. Notice shall be given by certified or registered mail, return receipt requested, to all persons entitled to notice of the petition. Notice shall also be posted conspicuously at the entrance of the home and shall be advertised at least three times in the real estate section of a daily paper with general circulation in the area where the park is situated. Any person, including a lienholder or the owner of the mobile manufactured home park, may bid at the sale. The proceeds of such sale shall be applied first to the costs of the sale and then to the payment of lienholders in the order of the priority of their liens. If proceeds remain thereafter they shall be paid over to the owner of the mobile manufactured home. Upon conclusion of the sale, the park owner shall file an affidavit with the court setting forth the nature of its compliance with the court's order of sale. The court, upon finding compliance with its order, shall issue a conveyance of title and release of liens, if any, to the purchaser for filing in the land records, which shall constitute good title to the home, and no execution shall issue on the original summary process action."

[2] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

The record reveals the following undisputed facts and procedural history. The plaintiff is the owner of a mobile manufactured home park in the city that contains in excess of 100 lots available for lease to individual owners of mobile homes. The defendants, Roseann Amaro, and Deena Aiken and Michael Aiken,[3] each owned a mobile home and leased one of the lots from the plaintiff. In 2007, after the defendants became delinquent in their rent payments, the plaintiff initiated summary process actions against them and obtained judgments of possession with regard to both of the lots. The defendants subsequently vacated the mobile home park, but left their mobile homes—each of which was subject to an outstanding tax lien in favor of the city— unoccupied on the plaintiff's property.

Thereafter, the plaintiff filed petitions for a finding of abandonment and for an order of public sale of both mobile homes pursuant to § 21-80 (e). The trial court, *Hon. George W. Ripley II*, judge trial referee, granted the plaintiff's petitions and set a sale date of January 3, 2008, for each of the mobile homes.[4] Pursuant to § 21-80 (e) (4), the plaintiff gave notice of the sales, including a conspicuous statement that the sales would extinguish all previous ownership and lien rights in the mobile homes, to all existing lienholders, including the city. The plaintiff then conducted the public sales on the scheduled date, where it was the successful bidder for both of the homes.

Subsequently, the plaintiff filed a motion for conveyance of title and release of liens pursuant to § 21-80 (e) (4), and the city appeared in the action and filed an objection to the motion, asserting that its tax liens on the mobile homes had not been released as a consequence of the sales because the liens had absolute prior-

---

[3] We note that the defendants have failed to file briefs or appear at oral argument before this court in the present appeal.

[4] The original sale date was set for December 4, 2007, but subsequently was rescheduled for January 3, 2008, as a result of issues regarding the

ity under General Statutes (Rev. to 2007) § 12-172.[5] The trial court, *Tyma, J.*, approved the sales on January 31, 2008, and ordered that the defendants transfer title of the mobile homes to the plaintiff and that the proceeds of each sale be distributed in accordance with § 21-80 (e) (4).[6] The court, however, reserved decision on the issue of whether the city's tax liens had been extinguished by the sales and, after further briefing and argument by the parties, subsequently determined that they had not been extinguished. Accordingly, the trial court denied the plaintiff's motion for an order "that all liens encumbering title to said mobile manufactured home[s] shall be released and extinguished." This appeal followed. See footnote 2 of this opinion.

On appeal, the plaintiff contends that the trial court's denial of its motion for the release of all liens encumbering title to the mobile homes was improper because the clear and unambiguous language of § 21-80 (e) (4) requires that, once all of the requirements of that section have been satisfied, *all* previous ownership and lien rights, including tax liens in favor of a municipality, are extinguished, and that the successful bidder receives *good title* to the mobile home free from any encumbrances. The plaintiff further contends that a conclu-

---

provision of notice to existing lienholders.

[5] General Statutes (Rev. to 2007) § 12-172 provides in relevant part: "The interest of each person in each item of real estate, which has been legally set in his assessment list, shall be subject to a lien for that part of his taxes laid upon the valuation of such interest . . . . Such lien, unless otherwise specially provided by law, shall exist from the first day of October or other assessment date of the municipality in the year previous to that in which such tax, or the first installment thereof, became due until one year after such tax or first installment thereof became due and, during its existence, shall take precedence of all transfers and encumbrances in any manner affecting such interest in such item, or any part of it. . . ."

Hereinafter, all references in this opinion to § 12-172 are to the 2007 revision.

[6] It is undisputed that there were no proceeds left over from the sales after the costs of the sales had been taken into account and, therefore, that the city did not receive any payment from those proceeds with respect to either of its tax liens.

sion that the city's tax liens were not extinguished by the sales would defeat the purpose of § 21-80 (e), and effectively would make the plaintiff the guarantor of its tenants' tax obligations. In response, the city claims that mobile homes are considered real property for tax purposes and, therefore, that the city's tax liens on the subject homes were not extinguished by the sales because the liens had absolute priority pursuant to § 12-172.[7] The city also contends that a conclusion that its liens were extinguished by the sales would lead to unworkable results when § 21-80 (e) is considered in conjunction with General Statutes § 21-67a,[8] which sets

---

[7] We note that both the city on appeal and the trial court frame the issue as whether the language of § 21-80 (e) is clear and unambiguous with respect to whether mobile homes are considered real property, such that the city's liens fell within the ambit of § 12-172, which provides that tax liens on real property have absolute priority over all other liens and "take precedence of all transfers and encumbrances in any manner affecting such interest in such item, or any part of it." As the plaintiff points out, however, § 12-172 also provides that such priority only exists "unless otherwise specially provided by law . . . ." Thus, regardless of whether mobile homes are considered real or personal property, the plaintiff contends both in its brief and at oral argument before this court that the dispositive issue in this appeal is whether § 21-80 (e) is clear and unambiguous in its requirement that *all* liens, including municipal tax liens that are subject to § 12-172, are extinguished by the abandonment process, such that § 21-80 (e) simply is one of those circumstances "otherwise specially provided by law" under which municipal tax liens do not enjoy their privileged status. We agree and, accordingly, we need not address the issue of whether mobile homes are real or personal property for the purposes of § 21-80 (e).

[8] General Statutes § 21-67a provides in relevant part: "(f) Any owner of a mobile manufactured home located in a mobile manufactured home park or on a single-family lot who desires to remove such home from the park or lot in or on which it has been situated shall file for recording with the town clerk of said municipality a certificate substantially in the following form:

"MOBILE MANUFACTURED HOME REMOVAL STATEMENT

"...............of..............., owner of (description of mobile manufactured housing being removed, containing name of manufacturer, model and serial number) which has the following encumbrances,...............and which mobile manufactured home has been situated at (name of park, if any, street address, town/city) hereby intends to remove said mobile manufactured home from (address)..............to the following location:..............

"Signed this...............day of..........., 20......

"Witnessed by:

"(Acknowledgment)

forth the process by which a mobile home owner may remove a mobile home from the park in which it is located. We agree with the plaintiff and conclude that the city's tax liens were extinguished by the sales.

Whether a municipal tax lien on an abandoned mobile home is extinguished by a public sale conducted pursuant to § 21-80 (e) "raises a question of statutory construction, which is a [question] of law, over which we exercise plenary review. . . . The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . .

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the

·"............, holder of the aforementioned security instrument/mortgage deed/ lien/ attachment, hereby consents to the removal of the aforesaid home, subject to the condition that the aforesaid security instrument/mortgage/lien/ attachment shall remain in full force and effect thereon..........., Tax Collector of the town of....................certifies that all property taxes due and payable with respect to the aforesaid mobile manufactured home have been paid in full.

"Signed this...............day of..........., 20......

"(g) . . . No owner of a mobile manufactured home located in a mobile manufactured home park or on a single-family lot who desires to remove such home from the park or lot in or on which such home has been situated or to convey such home to any purchaser shall remove such home from such park or lot without filing a valid removal statement pursuant to this subsection."

statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Hees* v. *Burke Construction, Inc.*, 290 Conn. 1, 10, 961 A.2d 373 (2009).

We begin our analysis with the applicable language of General Statutes § 21-80 (e) (4), which provides in relevant part: "The order directing sale [of a mobile manufactured home] shall require notice which includes a conspicuous statement that the sale will extinguish *all* previous ownership and lien rights. . . . The court, upon finding compliance with its order, shall issue a conveyance of title and release of liens, if any, to the purchaser for filing in the land records, which shall constitute *good title* to the home, and no execution shall issue on the original summary process action." (Emphasis added.) " 'In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language . . . .' General Statutes § 1-1 (a). We ordinarily look to the dictionary definition of a word to ascertain its commonly approved usage." *State* v. *Gelormino*, 291 Conn. 373, 380, 968 A.2d 379 (2009). Webster's Third New International Dictionary defines the word "all" to mean, inter alia, "the whole amount or quantity," "the whole extent or duration of," "the whole number or sum of," or "every member or individual component of . . . ." Similarly, in its definition of "good title," Black's Law Dictionary (7th Ed. 1999) references the entry for "clear title," which is defined as "[a] title free from any encumbrances, burdens, or other limitations."

The plain meaning of the language of § 21-80 (e) (4), therefore, clearly and unambiguously indicates that the legislature intended to provide the successful bidder at a public sale conducted pursuant to that statute with

clear and good title to the abandoned mobile home, free from any and all encumbrances, including municipal tax liens.[9] The statutory language does not provide that "the sale will extinguish all previous ownership and lien rights *except municipal tax liens*," nor does it provide that the purchaser will have "good title to the home *except that the title will remain subject to any outstanding municipal tax liens*." If the legislature had intended to preclude municipal tax liens from being extinguished through the abandonment process it easily could have done so expressly, and the fact that it did not is strong evidence that it did not so intend.[10] See, e.g., *Barton* v. *Bristol*, 291 Conn. 84, 100–101, 967 A.2d 482 (2009).

---

[9] That is not to say that municipal tax liens that are subject to § 12-172 lose their *priority* over other liens prior to their extinguishment. In the event that there are proceeds left over from the sale after the costs have been paid, for example, municipal tax liens maintain their priority over other liens, and those proceeds must first be applied to satisfy any outstanding municipal tax liens. See General Statutes § 21-80 (e) (4) ("[t]he proceeds of such sale shall be applied first to the costs of the sale and then to the payment of lienholders in the order of the priority of their liens"). When, as here, no proceeds are left over after the sale, however, the language of § 21-80 (e) (4) clearly and unambiguously provides that municipal tax liens are extinguished in the same manner as all other liens.

[10] We disagree with the city's claim that, although a sale conducted pursuant to § 21-80 (e) may extinguish all other liens, it does not extinguish municipal tax liens, and thus does not "otherwise specially provide by law" under § 12-172, because, the city argues, the language of § 21-80 (e) (3) distinguishes between "the municipality" and "all lienholders" with respect to the provision of notice for the hearing on the petition. See General Statutes § 21-80 (e) (3) ("[a] copy of the petition and the notice of the hearing on the petition shall be given to the owner of the mobile manufactured home, the municipality and all lienholders who have recorded a lien against the mobile manufactured home or of whom the owner of the mobile manufactured home park has actual knowledge"). The city's claim lacks merit because the inclusion of the term "municipality" in § 21-80 (e) (3) simply refers to the fact that notice of the hearing must be given to "all lienholders" *and* "the municipality," meaning nothing more than that the relevant municipality must receive notice of the hearing regardless of whether it is a lienholder. Put differently, that the municipality must receive notice of the hearing on the petition does not in any way imply that municipal tax liens are excepted from the extinguishment provision of § 21-80 (e) (4).

The clear and unambiguous statutory language notwithstanding, the city nevertheless responds that an interpretation of § 21-80 (e) that extinguishes its tax lien would lead to unworkable results when that statute is considered in conjunction with § 21-67a (f) and (g), which together preclude a mobile home owner from removing a mobile home from the park in which it is located unless the owner first obtains a certification from the tax collector of the town "that all property taxes due and payable with respect to the aforesaid mobile manufactured home have been paid in full." General Statutes § 21-67a (f). More specifically, the city contends that § 21-80 (e) (4) provides only for the extinguishment of *lien rights*, and not the extinguishment of the outstanding tax obligation itself. Thus, the city contends that the legislature could not have intended to extinguish its tax liens because the city remains entitled to receive the outstanding tax debt even after the sale has taken place, and can prevent the successful bidder from removing the abandoned mobile home from the park until that obligation has been satisfied. Although we agree that an interpretation of § 21-80 (e) that provides for the extinguishment of the city's tax liens would lead to an unworkable result if that statute is considered in conjunction with § 21-67a, we disagree with the city's claim because the applicable legislative history[11] leads us to conclude that the removal requirements set forth in § 21-67a do not apply when a park owner takes title to and seeks to remove and dispose of an abandoned mobile home after a sale pursuant to § 21-80 (e).

"[I]t is now well settled that testimony before legislative committees may be considered in determining the particular problem or issue that the legislature sought

---

[11] "[U]nder § 1-2z, we are free to examine extratextual evidence of the meaning of a statute, including its legislative history, when application of the statute's plain and unambiguous language leads to an [absurd or] unworkable result." *Rivers* v. *New Britain*, 288 Conn. 1, 18–19, 950 A.2d 1247 (2008).

to address by the legislation." (Internal quotation marks omitted.) *Jim's Auto Body* v. *Commissioner of Motor Vehicles*, 285 Conn. 794, 812, 942 A.2d 305 (2008). A review of such testimony in the present case demonstrates that § 21-80 (e) was enacted, with broad support from the mobile manufactured home industry, consumer groups and municipalities, to address an increasing number of mobile homes that had been abandoned by their owners and left to decay in the park in which they were located, thereby deteriorating the condition of the park and decreasing the value of the other residents' homes. See Conn. Joint Standing Committee Hearings, General Law, Pt. 3, 1999 Sess., pp. 905–906, remarks of Joseph Mike, executive director of the Connecticut Manufactured Housing Association; id., pp. 906–907, remarks of Jeffrey Ossen, member of the Mobile Manufactured Home Advisory Council. Prior to the enactment of § 21-80 (e), a park owner's only legal remedy under such circumstances was to initiate a summary process action against the mobile home owner pursuant to General Statutes § 47a-23 et seq., and ultimately to move the mobile home to the street for removal by the municipality pursuant to General Statutes § 47a-42.[12] See id., p. 909, remarks of Ossen. This

[12] General Statutes § 47a-42 provides: "(a) Whenever a judgment is entered against a defendant pursuant to section 47a-26, 47a-26a, 47a-26b or 47a-26d for the recovery of possession or occupancy of residential property, such defendant and any other occupant bound by the judgment by subsection (a) of section 47a-26h shall forthwith remove himself or herself, such defendant's or occupant's possessions and all personal effects unless execution has been stayed pursuant to sections 47a-35 to 47a-41, inclusive. If execution has been stayed, such defendant or occupant shall forthwith remove himself or herself, such defendant's or occupant's possessions and all personal effects upon the expiration of any stay of execution. If the defendant or occupant has not so removed himself or herself upon entry of a judgment pursuant to section 47a-26, 47a-26a, 47a-26b or 47a-26d, and upon expiration of any stay of execution, the plaintiff may obtain an execution upon such summary process judgment, and the defendant or other occupant bound by the judgment by subsection (a) of section 47a-26h and the possessions and personal effects of such defendant or other occupant may be removed by a state marshal, pursuant to such execution, and such possessions and personal effects may be set out on the adjacent sidewalk, street or highway.

process, however, was unwieldy and problematic, due in large part to the inability and unwillingness of many municipalities to remove and dispose of the abandoned mobile homes. See id., p. 906, remarks of Ossen (noting that summary process eviction procedure "creates a problem for the municipalities, which may have an obligation to dispose of [abandoned mobile homes]"); id., pp. 919–20, remarks of Marcia Stemm, member of the Connecticut Mobile Home Advisory Council (noting that local sheriff is unable to remove abandoned home from park because city refuses to accept responsibility for evicted home); id., p. 980, written testimony of the

"(b) Before any such removal, the state marshal charged with executing upon any such judgment of eviction shall give the chief executive officer of the town twenty-four hours notice of the eviction, stating the date, time and location of such eviction as well as a general description, if known, of the types and amount of property to be removed from the premises. Before giving such notice to the chief executive officer of the town, the state marshal shall use reasonable efforts to locate and notify the defendant of the date and time such eviction is to take place and of the possibility of a sale pursuant to subsection (c) of this section. Such notice shall include service upon each defendant and upon any other person in occupancy, either personally or at the premises, of a true copy of the summary process execution. Such execution shall be on a form prescribed by the Judicial Department, shall be in clear and simple language and in readable format, and shall contain, in addition to other notices given to the defendant in the execution, a conspicuous notice, in large boldface type, that a person who claims to have a right to continue to occupy the premises should immediately contact an attorney.

"(c) Whenever the possessions and personal effects of a defendant are set out on the sidewalk, street or highway, and are not immediately removed by the defendant, the chief executive officer of the town shall remove and store the same. Such removal and storage shall be at the expense of the defendant. If such possessions and effects are not called for by the defendant and the expense of such removal and storage is not paid to the chief executive officer within fifteen days after such eviction, the chief executive officer shall sell the same at public auction, after using reasonable efforts to locate and notify the defendant of such sale and after posting notice of such sale for one week on the public signpost nearest to the place where the eviction was made, if any, or at some exterior place near the office of the town clerk. The chief executive officer shall deliver to the defendant the net proceeds of such sale, if any, after deducting a reasonable charge for removal and storage of such possessions and effects. If the defendant does not demand the net proceeds within thirty days after such sale, the chief executive officer shall turn over the net proceeds of the sale to the town treasury."

Connecticut Conference of Municipalities ("Municipalities do not have the proper equipment or personnel to remove these large mobile homes. They may have to hire a private company and police escorts to safely fulfill the[ir] legal obligation. . . . Municipalities do not have the resources to remove or store the units and spend a great deal of time and money attempting to store these homes that are in extremely poor and unsafe condition.").

Accordingly, it is clear that § 21-80 (e) was enacted, as an alternative to the existing summary process eviction procedure, to create "a process by which the home can be found to be abandoned, its sale permitted, and a clear title to the home can be obtained." Id., pp. 920–21, remarks of Stemm. In the unlikely event that the abandoned home retains any value, the purchaser may refurbish it in order to put it to productive use. See id., p. 906, remarks of Mike; id., p. 921, remarks of Stemm. In the more probable event that the abandoned home has lost all of its value, § 21-80 (e) provides the successful bidder, who most often will be the park owner, with the ability to obtain title to the abandoned mobile home and remove it from the park for disposal, thereby eliminating the role of municipalities in the removal process[13] and allowing the park owner to rent the underlying lot to a new tenant. See id., pp. 905–906, remarks of Mike ("It takes years to get that home which deteriorates over time out. What we are looking for is an opportunity to either purchase the home, clear the title, or remove the home. If [it is] purchased it can be refurbished or

---

[13] See Conn. Joint Standing Committee Hearings, supra, p. 980, written testimony of the Connecticut Conference of Municipalities ("This bill clarifies that municipalities do not have responsibility for the eviction of mobile manufactured homes. Currently, when an eviction occurs in a mobile home park and the mobile home has been abandoned, the municipality may be responsible for removing the mobile manufactured home, storing it, and holding a public auction. This bill would clarify the removal of municipalities from this process.").

just removed so that we can bring another home in. Someone could occupy it."); id., p. 913, remarks of Raphael Podolsky, Legal Assistance Resource Center ("[a]nd so it has . . . a little bit of that tone of foreclosing out other's interest[s] so that you could essentially get the home off the lot"); id., pp. 920–21, remarks of Stemm ("This bill provides a process by which the home can be found to be abandoned, its sale permitted, and a clear title to the home can be obtained. With this process, a home can be either refurbished and occupied or scrapped and replaced with a new home.").

On the basis of the legislative history and the clear purpose behind § 21-80 (e), we conclude that an interpretation of that statute that extinguishes the city's tax liens does not lead to unworkable results because the removal requirements set forth in § 21-67a do not apply when a park owner seeks to remove and dispose of an abandoned mobile home pursuant to § 21-80 (e). Under the traditional summary process eviction scheme, a park owner, who does not own the mobile homes located on its lots, is permitted to place an abandoned mobile home on the street for removal by the municipality without regard to whether there are outstanding tax debts related to that home. See General Statutes § 21-67a (g) ("[n]o *owner* of a mobile manufactured home . . . shall remove such home from such park or lot without filing a valid removal statement pursuant to this subsection" [emphasis added]). The legislative history makes clear that § 21-80 (e) was intended, in large part, to supplant the summary process eviction procedure with respect to the removal of abandoned mobile homes and, specifically, to provide a more efficient process by which a park owner may remove such homes without having to place that burden on the municipality. It would, therefore, defeat the purpose of § 21-80 (e) if a park owner could be prevented from removing and disposing of an abandoned mobile home that happens

to be subject to an outstanding tax debt simply because the park owner took title to that home pursuant to § 21-80 (e), when it could not have been prevented from doing so had it proceeded alternatively under the summary process eviction scheme.[14] Indeed, were we to interpret the requirements of § 21-67a to apply in circumstances such as those here, then a park owner likely would be forced to forgo the abandonment process and elect instead to proceed under the traditional summary process procedure, thereby placing the burden of removing and disposing of the abandoned mobile homes back on the municipality and effectively negating the impact of § 21-80 (e). We do not believe that the legislature intended such a result. See *American Pro-*

[14] Indeed, the testimony of Stemm, a member of both the Connecticut and Massachusetts Manufactured Home Associations and a member of the Connecticut Mobile Home Advisory Council, before the Joint Standing Committee, indicates that the circumstances of the present case are precisely the type of situation that § 21-80 (e) was intended to address. Specifically, Stemm testified: "I have a mobile home that has been abandoned in one of our parks since December of 1995. My former tenants still live in town. The husband works for the [s]tate of Connecticut and they have not paid any of their property taxes on their mobile home since they purchased it in 1988.

"They currently owe over $10,000 in taxes. I have received an eviction judgment from housing court but the sheriff in my town is unable to remove the mobile home from the park. The city refuses to accept responsibility for the evicted property. The sheriff has told me that he will be arrested by the police department for creating a traffic hazard if we move the home to [the] curbside.

"The city has been less than cooperative in this because they hope to recoup their tax money on this home. In the meantime, the home can't be removed from my property unless a removal statement showing that the taxes have been paid is signed by the tax collector.

"I have sent letters. I have met with the local mayor to try to resolve this problem, and he promises to look into it and set up a meeting with the tax collector, but he has not yet done so. The only ones who suffer are me and my tenants because we are stuck with this abandoned home in the park. . . .

"This bill provides a process by which the home can be found to be abandoned, its sale permitted, and a clear title to the home can be obtained. With this process, a home can be either refurbished and occupied or scrapped and replaced with a new home. The result in either case is an additional affordable housing, the elimination of an eyesore and the return to me of the use of my land." Conn. Joint Standing Committee Hearings, supra, pp. 919–21.

*motional Events, Inc.* v. *Blumenthal,* 285 Conn. 192, 203, 937 A.2d 1184 (2008) ("[i]t is a basic tenet of statutory construction that the legislature [does] not intend to enact meaningless provisions" [internal quotation marks omitted]).

Accordingly, we conclude that the city's tax liens were extinguished upon the court-ordered sale of the abandoned mobile homes and, therefore, that the trial court improperly failed to grant the plaintiff's motions for a conveyance of title and release of all liens.

The judgments are reversed and the cases are remanded to the trial court with direction to render judgments for the plaintiff conveying good title and release of all liens.

In this opinion the other justices concurred.