******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MARTIN A. GOULD *v.* FREEDOM OF
INFORMATION COMMISSION
ET AL.
(SC 18966)

Rogers, C. J., and Zarella, Eveleigh, McDonald, Espinosa, Vertefeuille and DiPentima, Js.*

*Argued October 23, 2013—officially released December 16, 2014*

*Martin A. Gould*, self-represented, with whom was *Mark W. Baronas* and, on the brief, *Nancy Gould*, for the appellant (plaintiff).

*Lisa Fein Siegel*, commission counsel, with whom, on the brief, was *Colleen M. Murphy*, general counsel, for the appellee (named defendant).

*Tara L. Shaw*, with whom, on the brief, was *John H. Cassidy* and *Thomas G. Parisot*, for the appellee

(defendant James Moore et al.).

*Opinion*

EVELEIGH, J. The plaintiff, Martin A. Gould, a member of the arbitration panel that is the subject of the present case, appeals from the judgment of the trial court dismissing his appeal from the final decision of the defendant Freedom of Information Commission (commission).[1] In its decision, the commission concluded that: (1) the arbitration panel is a committee of the Department of Education (department); and (2) the evidentiary portion of an arbitration hearing under the Teacher Negotiation Act (TNA); see General Statutes § 10-153a et seq.; is subject to the open meetings provision of the Freedom of Information Act (FOIA); see General Statutes § 1-225 (a);[2] and ordered the plaintiff, along with the two other members of the three member arbitration panel, to create a transcript of the stenographic record from an arbitration hearing dated January 30, 2010, and to provide that transcript to the defendant Waterbury Republican-American (newspaper) and the defendant Jim Moore, a journalist with the newspaper, who had been excluded from the arbitration proceedings.[3]

The plaintiff advances two arguments in support of his contention that the trial court improperly dismissed his appeal. First, the plaintiff claims that, because a TNA arbitration panel is not a "committee of" the department, it does not constitute a " '[p]ublic agency' " pursuant to General Statutes (Supp. 2014) § 1-200 (1) (A).[4] Second, the plaintiff claims that, because the presentation of evidence and testimony at a TNA arbitration hearing constitutes "strategy or negotiations with respect to collective bargaining," the evidentiary portion of the hearings does not constitute a " '[m]eeting' " pursuant to § 1-200 (2). See footnote 4 of this opinion. We agree with the plaintiff's first claim and, therefore, reverse the judgment of the trial court.[5]

The final decision of the commission sets forth the following relevant facts.[6] On December 21, 2009, the Torrington City Council rejected a negotiated agreement between the Torrington Board of Education (board) and the Torrington Education Association (association). As required by the TNA, the parties then proceeded to arbitration. See General Statutes § 10-153f (c) (1).[7] Because the board and the association had elected to proceed with a three member arbitration panel rather than a single arbitrator, the parties each selected one arbitrator, then the two arbitrators agreed upon a third, impartial arbitrator. See General Statutes § 10-153f (c) (1). At a hearing dated January 30, 2010, Moore sought to cover the arbitration proceedings for the newspaper. In response to the association's request that Moore be excluded from the proceedings, the arbitration panel, which consisted of the plaintiff, James Larry Foy and Victor Schoen, adjourned to what it designated an executive session, closed to the public. Claim-

ing that the panel violated the open meetings provision of the FOIA by closing the evidentiary portion of the arbitration proceedings to the public, Moore and the newspaper subsequently filed a complaint with the commission, and requested as relief that the commission order the panel to provide a transcript of the hearing.

Because the commission concluded that the evidentiary portion of a TNA arbitration hearing constitutes a meeting of a public agency for purposes of § 1-200, it agreed with Moore and the newspaper that the panel violated the open meetings provision of the FOIA by excluding Moore from the portion of the hearing devoted to the presentation of evidence and testimony. In concluding that a TNA arbitration panel is a public agency, the commission relied on the language of § 10-153f (a), which provides that the pool from which TNA arbitration panels are drawn is "in" the department. General Statutes § 10-153f (a).[8] Accordingly, the commission concluded that the panel constituted a committee of the department pursuant to § 1-200 (1) (A). As for its conclusion that the evidentiary portion of the arbitration hearing constituted a meeting, the commission relied on this court's decision in *Glastonbury Education Assn.* v. *Freedom of Information Commission*, 234 Conn. 704, 663 A.2d 349 (1995). In that decision, although this court concluded that the presentation of last best offers during a TNA arbitration proceeding constituted "strategy or negotiations with respect to collective bargaining" and, therefore, did not fall within the definition of "meeting" pursuant to § 1-200 (2), we expressly left open the question of whether the evidentiary portion of a TNA arbitration hearing fell within that definition. (Internal quotation marks omitted.) Id., 717–18. Relying on language in *Glastonbury Education Assn.* that distinguished between the presentation of last best offers and the evidentiary portions of TNA arbitration hearings, the commission concluded that the evidentiary portion of the hearing in the present case was separate from the presentation of the last best offers. On the basis of that distinction, the commission concluded that the evidentiary portion of the hearing did not constitute "strategy or negotiations with respect to collective bargaining." Therefore, the commission concluded that the evidentiary portion of the hearing constituted a "meeting" pursuant to § 1-200 (2) and was subject to the open meetings provision of the FOIA. The commission ordered the members of the arbitration panel and the department to create a transcript of the stenographic record of the hearing dated January 30, 2010, at their own expense and to provide that transcript to the defendants.

The department, the plaintiff and Schoen appealed from the final decision of the commission to the Superior Court, which dismissed the appeal.[9] The trial court held that the commission properly resolved both the issues of whether the panel was a public agency and

whether the evidentiary portion of the hearing was a meeting. In dismissing the appeal, the trial court, like the commission, relied on the language of § 10-153f (a) to conclude that the panel was a "committee of" the department and, therefore, a public agency for the purpose of the FOIA. The court also agreed with the commission that the evidentiary portion of TNA arbitration hearings constituted a meeting for purposes of § 1-200 (2), concluding that this court has construed the exception for "strategy and negotiations with respect to collective bargaining" from the definition of meeting narrowly, both in *Glastonbury Education Assn.* v. *Freedom of Information Commission*, supra, 234 Conn. 712–13, and *Waterbury Teachers Assn.* v. *Freedom of Information Commission*, 240 Conn. 835, 839, 694 A.2d 1241 (1997). Applying a narrow construction of that exception, the trial court concluded that the commission's order conformed to the "more limited order envisioned by the majority in [*Glastonbury Education Assn.*]." This appeal followed.

We first address the issue of whether a TNA arbitration panel is a public agency within the meaning of § 1-200 (1) (A). More precisely, because § 1-200 (1) (A) includes within the definition of " '[p]ublic agency' " a "committee of" a public agency, and because the department is indisputably a public agency, the issue before us is whether a TNA arbitration panel is a "committee of" the department. The plaintiff contends that the trial court's conclusion that a TNA arbitration panel is a "committee of" the department cannot be reconciled with this court's decision in *Elections Review Committee of the Eighth Utilities District* v. *Freedom of Information Commission*, 219 Conn. 685, 687, 595 A.2d 313 (1991), in which we interpreted that phrase to be confined to subunits of a public agency. The commission responds that, because the plain language of § 10-153f (a) locates the arbitration panel within the department, the panel is a "committee of" the department, and, therefore, a public agency.

The question of whether a TNA arbitration panel constitutes a committee of the department and, therefore, a public agency pursuant to § 1-200 (1) (A) presents an issue of statutory construction, over which we exercise plenary review. See *Marchesi* v. *Board of Selectmen*, 309 Conn. 608, 614, 72 A.3d 394 (2013). When construing a statute, "[o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and

does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Kasica* v. *Columbia*, 309 Conn. 85, 93, 70 A.3d 1 (2013).

We begin our analysis with the statutory text. Section 1-200 (1) (A) provides in relevant part that the term " '[p]ublic agency' " means "[a]ny executive, administrative or legislative office of the state or any political subdivision of the state and any state or town agency, any department, institution, bureau, board, commission, authority or official of the state or of any city, town, borough, municipal corporation, school district, regional district or other district or other political subdivision of the state, *including any committee of*, or created by, any such office, subdivision, agency, department, institution, bureau, board, commission, authority or official . . . ." (Emphasis added.)

The meaning of the term "committee" was considered in *Elections Review Committee of the Eighth Utilities District* v. *Freedom of Information Commission*, supra, 219 Conn. 685, when this court construed the term "public agency," as used in a prior, nearly identical version of § 1-200 (1) (A).[10] In that case, the eighth utilities district (district) for the town of Manchester, a public agency, appointed an elections review committee to study the procedures of the annual meeting of the district in order to expedite that process and to obtain greater participation by the electors. Id., 687. The elections review committee appointed was composed of one district director and three volunteer electors who held no office in the district. Id. The elections review committee was requested to file a report with the district, but it had no authority to change the procedures of the annual meeting or to alter any provisions of the bylaws. Id. Under these facts, this court concluded that the elections review committee was not a committee within the meaning of the FOIA because "the legislature intended only that committees of public agencies that are subunits composed of members of the public agency be subject to the provisions of the FOIA." Id., 697.

In order to resolve the plaintiff's claim, therefore, we must resolve whether TNA arbitration panels are subunits of the department. To resolve this issue, we look to § 10-153f (a). The first sentence of § 10-153f (a) provides: "There shall be *in* the Department of Education an arbitration panel of not less than twenty-four or more than twenty-nine persons to serve as provided

in subsection (c) of this section." (Emphasis added.) The defendants assert that this language clearly and unambiguously supports their position that the arbitration panel is a subunit of the department. We disagree, however, and conclude that an equally plausible reading of the language is that the list is maintained "in" the department solely for administrative purposes.

Section 10-153f (a) gives the governor, not the Commissioner of Education (commissioner), the power to select panel members. The arbitrators are appointed to the arbitration panel "pool" by the governor. The statute also mandates that seven members represent local and regional boards, seven members represent the bargaining unit, and ten to fifteen members are impartial representatives of the public in general. General Statutes § 10-153f (a). Thus, after the Governor fulfills his mandate, a list is established of this cross section of arbitrators, which is maintained by the department. There is no one panel of arbitrators. The panels are selected from the pool of arbitrators established by the governor. It is also evident that the people who comprise this list come from a cross section of members of the general public. The language of the statute does not allow for one arbitrator to be appointed who is a member of the State Board of Education or the department. General Statutes § 10-153f (a). Moreover, the commissioner has no power to remove a member of the panel. Section 10-153f (a) provides that "[a]rbitrators may be removed for good cause. If any vacancy occurs in such panel, the Governor shall act within forty days to fill such vacancy in the manner provided in section 4-19."

The statute further demonstrates the separation between the panel members and the department by requiring that the arbitrators be paid by the parties and not by the department. General Statutes § 10-153f (a). Section 10-153f (a) further provides: "Persons appointed to the arbitration panel shall serve without compensation but each shall receive a per diem fee for any day during which such person is engaged in the arbitration of a dispute pursuant to this section. The parties to the dispute so arbitrated shall pay the fee in accordance with subsection (c) of this section."

The arbitration panel does not just have a great deal of autonomy, it has complete autonomy. Pursuant to § 10-153f (c) (2), the chairperson of the arbitration panel or the single arbitrator sets the date, time, and place for a hearing to be held and notifies the board of education and the department. The chairperson of the arbitration panel or the single arbitrator presides over the hearing. General Statutes § 10-153f (c) (2). The panel or the single arbitrator has the discretion to continue the hearing, but must complete the hearing within twenty-five days after its commencement. General Statutes § 10-153f (c) (3). After the hearing, the arbitrators

or the single arbitrator renders a decision in writing and files "one copy of the decision with the commissioner, each town clerk in the school district involved, the legislative body or bodies of the town or towns for the school district involved, or, in the case of a town for which the legislative body of the town is a town meeting or representative town meeting, to the board of selectmen, and the board of education and organization which are parties to the dispute." General Statutes § 10-153f (c) (4). This decision is final and binding upon the parties to the dispute unless a rejection is filed and the award of the arbitrators or the single arbitrator shall not be subject to rejection by referendum. General Statutes § 10-153f (c) (4).

On the basis of the foregoing, it would appear reasonable to conclude that, aside from having their name on the list, the arbitrators have no association whatsoever with the department. Nevertheless, it would also be reasonable to conclude that the legislature's use of the term "in the department" indicated an intention to have the panel members be considered part of the department. " '[I]t is well settled that when two incongruent readings of a statute are equally plausible, the statute is ambiguous.' See, e.g., *Fairchild Heights, Inc.* v. *Amaro*, 293 Conn. 1, 9, 976 A.2d 668 (2009); *Hees* v. *Burke Construction, Inc.*, 290 Conn. 1, 12, 961 A.2d 373 (2009)." *Hartford/Windsor Healthcare Properties, LLC* v. *Hartford*, 298 Conn. 191, 198, 3 A.3d 56 (2010). Accordingly, we conclude that § 10-153f (a) is ambiguous and, pursuant to § 1-2z, resort to extratextual sources in order to determine its meaning.

The particular amendment to § 10-153f (a) that inserted the word "in" was a part of a wide-ranging amendment to the statutes relating to state agencies enacted in 1977. See Public Acts 1977, No. 77-614, § 304 (P.A. 77-614). It is likely that, because the prior version of the statute referred to "the secretary" without defining the agency to which "the secretary" belonged; see General Statutes (Rev. to 1977) § 10-153f; the insertion of the phrase "in the department of education" was simply to clarify that aspect of the statute and to provide that the list of arbitrators was to be maintained "in" the department of education.

In the absence of legislative guidance, we next consider the dictionary definition of the word "in." See *Stone-Krete Construction, Inc.* v. *Eder*, 280 Conn. 672, 678, 911 A.2d 300 (2006) ("[t]o ascertain the commonly approved usage of a word, we look to the dictionary definition of the term" [internal quotation marks omitted]). According to Merriam-Webster's Collegiate Dictionary (11th Ed. 2003), the word "in" is used to indicate physical surroundings. The word "in" clearly does not mean that the arbitrators are employees, or are associated with, the department because the three arbitrators in this case are, in effect, independent contractors,

whom, aside from being on the list, have no association with the department. The arbitrators do not act for or on behalf of the department. Moreover, the panel members are not physically located in the department and, in fact, have no association of any kind with the department. Indeed, if the arbitrators did have some association with the department it could affect the very neutrality which is essential to the appointment of the arbitration panel, particularly the third arbitrator. As we have often stated, "[w]e construe a statute in a manner that will not . . . lead to absurd results." (Internal quotation marks omitted.) *Raftopol* v. *Ramey*, 299 Conn. 681, 703, 12 A.3d 783 (2011). Therefore, the only physical presence connected with the department is the list of arbitration panel members. This list is maintained by the department and is located in the department. We conclude, therefore, that the panel members are not in the department.

Nevertheless, the fact that the list is maintained by the department is not dispositive of the case. Pursuant to *Elections Review Committee of the Eighth Utilities District*, it is the *relationship* of the members of the arbitration panels with either the board or the department which is determinative. In this instance, it is abundantly clear from both the language of § 10-153f and the specific facts of the case that the arbitrators have no relationship with the department. The arbitration panels neither conduct business for, nor make decisions on behalf of, the department. They do not act for the department. The panels are not composed of members of the department. We, therefore, conclude that arbitration panels are neither "committees" nor "subunits of committees" of the department.

Thus, pursuant to § 10-153f, the panel controls the conduct of the meeting, the scheduling of hearings, and makes the ultimate decision without interference from anyone. The fact that the commissioner may be able to call the parties in to see him; see General Statutes § 10-153f (c) (1); is a separate issue from the duties of the panel. The commissioner has no control over the panel members. In fact, the statute specifically provides that the chair of the panel shall preside over the hearing. General Statutes § 10-153f (c) (2). There is no wording in the statute that mandates that the hearings must be public. The chair determines the manner in which the hearing is conducted. The decision of the panel is final, subject to rejection, further panel review or judicial review. General Statutes § 10-153f (c) (8). Moreover, the commissioner has no power to change the decision of the panel. Any suggestion to the contrary belies the facts surrounding the arbitration process.

An examination of § 10-153f reveals no language allowing the commissioner to oversee the panel in any way. For instance, § 10-153f (c) (1) does allow the commissioner to "order the parties to appear before [him]

during the arbitration period." This authority, however, relates to the commissioner's authority over the parties rather than the arbitration panel. Section 10-153f (c) (4) requires the panel to send a copy of its decision to the commissioner, but there is no provision that allows the commissioner to change the decision in any way. Section 10-153f (c) (5) allows the commissioner to "assist the arbitration panel . . . as may be required during the course of the arbitration . . . ." This duty would seem to relate to the appointment of panelists, but certainly would suggest that the commissioner assists the panel only if it either requires or asks for assistance. Section 10-153f (c) (7) requires further notification to the commissioner if the school district rejects the award. This language relates to notice and does not suggest that the commissioner can exercise any power over the arbitrator's decision. In addition § 10-153f (d) provides: "The commissioner and the arbitrators or single arbitrator shall have the same powers and duties as the board under section 31-108 for the purposes of mediation or arbitration pursuant to this section, and subsection (c) of section 10-153d, and all provisions in section 31-108 with respect to procedure, jurisdiction of the Superior Court, witnesses and penalties shall apply." Again, this statutory language would suggest that, at least in certain areas, the powers of the arbitration panel and the commissioner are equal, as opposed to the commissioner overseeing the panel. This section may also relate to § 10-153f (c) (1), which allows the commissioner to "order the parties to appear before said commissioner during the arbitration period. . . ."

"It is a well settled principle of statutory construction that the legislature knows how to convey its intent expressly . . . or to use broader or limiting terms when it chooses to do so." (Citations omitted; internal quotation marks omitted.) *Marchesi* v. *Board of Selectmen*, supra, 309 Conn. 618. If the legislature wished to have such hearings conducted in public, it could have expressed that intent after our decision in *Elections Review Committee of the Eighth Utilities District*. Twenty-three years has passed since our decision, and the legislature has yet to do so. "We may infer that the failure of the legislature to take corrective action within a reasonable period of time following a definitive judicial interpretation of a statute signals legislative agreement with that interpretation. See, e.g., *Mahon* v. *B.V. Unitron Mfg., Inc.*, 284 Conn. 645, 665–66, 935 A.2d 1004 (2007)." *Caciopoli* v. *Lebowitz*, 309 Conn. 62, 77–78, 68 A.3d 1150 (2013). "Although we are aware that legislative inaction is not necessarily legislative affirmation . . . we also presume that the legislature is aware of [this court's] interpretation of a statute, and that its subsequent nonaction may be understood as a validation of that interpretation." (Internal quotation marks omitted.) Id., 78. Section 10-153f contains many directives to the panel. It does not, however, direct that

the hearings be held in public.[11] In fact, it has specifically directed that the conduct of the proceedings be directed by the chair. The fact that the panel is completely autonomous and is comprised of members who are not either a part of or acting on behalf of the department persuades us that an arbitration panel is not a "committee" of a state agency.

In *Zitser* v. *Central Connecticut State University*, Freedom of Information Commission, Docket No. FIC 1991-163 (November 27, 1991), a promotion and tenure committee at Central Connecticut State University was composed of faculty who were employees of the university. That committee received and reviewed recommendations of all candidates for tenure and promotion at the university, and made nonbinding recommendations to the president. Id. The commission concluded that, even though this was a committee comprised of faculty members, it was not a public agency within the meaning of the FOIA. Id. The commission ruled that "the [university's] faculty does not meet to conduct university business, and does not act in a legislative capacity or otherwise exercise supervision, control, jurisdiction or advisory power over decisions made at [the university]." Id. Similarly, neither the plaintiff nor the other arbitrators appointed to the panel in the present case conduct department business, act in a legislative capacity or have any control, input or advisory power over decisions made at the department.

It is undisputed that, in the present case, the arbitration panel was created by the association selecting the plaintiff, the board selecting Schoen, and those two arbitrators selecting Foy. The neutral arbitrator was paid by the association and the board, with each party paying one half of his fee. Pursuant to § 10-153f, the neutral arbitrator is not an employee of the department. The neutral arbitrator does not represent the department. The department does not fund the arbitration panel. The department does not set the dates or times for the hearing, nor does it control any of the activities or performance of the arbitrators. The neutral arbitrator, with the help of the other two arbitrators, controls the arbitration hearing without any intervention, input or direction for the department. The department has no power to approve or alter the decision of the arbitrators. The decision is final unless there is an appeal that then goes to a review panel, which is also composed of independent arbitrators. The department does not direct or interpret any of the statutory factors upon which the arbitrators base their decision. The plaintiff is a member of the pool selected by the governor and approved by the legislature, on behalf of the employee group, and served as arbitrator for the association. Schoen is a member of the panel selected by the governor and approved by the legislature, on behalf of the employer group, and served as the arbitrator for the board. The association selected the plaintiff for this

arbitration. It had the right to select him, or some other arbitrator. The plaintiff received no government funding, he set his own fee, billed the association and was paid by the association. The board selected Schoen for the arbitration. It had the right to select him or some other arbitrator. Schoen received no government funding, he set his own fee, billed the board and was paid by the board.

Arbitrators function in an autonomous fashion. As the foregoing demonstrates, the arbitration panel was not created by the government. A reasonable reading of § 10-153f, therefore, cannot support a determination that the commissioner "oversees" the arbitration process. The commissioner is directed to receive notice of the panel's decision regardless of whether that decision has been accepted by the school district. See General Statutes § 10-153f (c) (4). The commissioner may assist the panel, but there is no direction requiring or allowing for his participation in the arbitration hearing. See General Statutes § 10-153f (c) (5). In view of the total absence of a relationship between the panel members and the department, we conclude that the arbitration panel is not a "committee" of or "created by" the department.

We further note that the legislature chose not to use the phrase "for administrative purposes only" in P.A. 77-614, § 304, which amended § 10-153f. Cf. P.A. 77-614, § 305 ("[t]he Connecticut Historical Commission shall be within the [department] for administrative purposes only"). The phrase "for administrative purposes only" is defined in General Statutes § 4-38f (a) as follows: "An agency assigned to a department for administrative purposes only shall: (1) Exercise any quasi-judicial, rule-making or regulatory authority, licensing and policy-making functions which it may have independent of such department and without approval or control of the department; (2) prepare its budget, if any, and submit its budgetary requests through the department; and (3) hire its own personnel or enter into contracts, if authorized by law, or if the general assembly provides or authorizes the expenditure of funds therefor." In addition, § 4-38f (b) provides: "The department to which an agency is assigned for administrative purposes only shall: (1) Provide record keeping, reporting, and related administrative and clerical functions for the agency to the extend deemed necessary by the department head; (2) disseminate for the agency any required notices, rules or orders adopted, amended or repealed by the agency; (3) provide staff for the agency subject to the provisions of subdivision (3) of subsection (a) of this section; and (4) include in the departmental budget the agency's budgetary request, if any, as a separate part of said budget and exactly as prepared and submitted to the department by the agency." Thus, the term "for administrative purposes only" applies to an "agency" assigned to a department. Therefore, the legislature's

omission of the phrase "for administrative purposes only" in P.A. 77-614, § 304, indicates that the legislature did not consider the panel to be either an agency or subunit of an agency. Indeed, there would be no need for the legislature to use that phrase if, in its view, an arbitration panel was neither an agency nor subunit of an agency.

It is evident that, as we stated in *State Board of Labor Relations* v. *Freedom of Information Commission*, 244 Conn. 487, 500–501, 709 A.2d 129 (2004), "the legislature decided that the benefit associated with the confidentiality of [grievance] arbitration proceedings outweighed the benefit to be derived from granting public access to these proceedings."

The legislature knows how to require hearings to be held in public. For example, General Statutes § 31-110 provides: "Subject to regulations to be made by the [labor relations] board, the complaints, orders and testimony relating to a proceeding instituted under section 31-107 may be available for inspection or copying. All proceedings pursuant to said section shall be open to the public." The fact that this type of language was omitted from § 10-153f, we conclude, is the most persuasive evidence of the legislature's intent not to have these proceedings open to the public.

Finally, we note that the arbitration panel is also not, as the trial court concluded, the "functional equivalent" of the department. The only function or decision-making authority the arbitrators possess is simply to decide which best offers should be accepted. There is no governmental or other decision-making role. The department has no participation in the arbitration process. The arbitrators do not perform a governmental function. The government does not decide either what wages are paid, or what hours are worked. The arbitrators are paid by the entity which retains them to serve as arbitrators. There is little or no government involvement or regulation. The decision of this court in *Elections Review Committee of the Eighth Utilities District* v. *Freedom of Information Commission*, supra, 219 Conn. 685, therefore, controls the present case. Consequently, the panel members are not members of the agency and, therefore, do not fall within the mandates of the FOIA. As we recently stated in *Commission of Public Safety* v. *Freedom of Information Commission*, 312 Conn. 513, 550, 93 A.3d 1142 (2014), "The General Assembly retains the prerogative to modify or clarify [the FOIA] as it sees fit."

The judgment is reversed and the case is remanded to the trial court with direction to render judgment sustaining the plaintiff's appeal.

In this opinion ROGERS, C. J., and ZARELLA and VERTEFEUILLE, Js., concurred.

* This appeal originally was argued before a panel of this court consisting of Chief Justice Rogers and Justices Zarella, Eveleigh, McDonald, Espinosa

and Vertefeuille. Thereafter, Chief Judge DiPentima was added to the panel and she has read the record and briefs, and listened to a recording of the oral argument prior to participating in this decision.

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court and this court transferred the appeal to itself pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] General Statutes § 1-225 (a) provides in relevant part: "The meetings of all public agencies, except executive sessions . . . shall be open to the public. . . ."

We note that § 1-225 was amended by No. 10-171, § 4, of the 2010 Public Acts, which made certain changes to the statute that are not relevant to this appeal. For purposes of clarity, we refer to the current revision of the statute.

[3] In this opinion, we refer to the commission, the newspaper and Moore collectively as the defendants.

[4] General Statutes (Supp. 2014) § 1-200 provides in relevant part: "(1) 'Public agency' or 'agency' means:

"(A) Any . . . department . . . of the state . . . including any committee of, or created by, any such . . . department . . . .

"(2) 'Meeting' means any hearing or other proceeding of a public agency . . . to discuss or act upon a matter over which the public agency has supervision, control, jurisdiction or advisory power. 'Meeting' does not include . . . strategy or negotiations with respect to collective bargaining . . . ."

We note that the legislature has also recently made certain amendments to § 1-200 that are not relevant to the present appeal. See Public Acts 2011, No. 11-220, § 1; Public Acts 2013, No. 13-263, § 7. For purposes of clarity we refer to the version of the statute codified in the 2014 supplement.

[5] In view of the fact that we agree with the plaintiff on his first claim, it is unnecessary to reach the second claim.

[6] The commission adopted the proposed final decision of the hearing officer, Victor R. Perpetua, who presided over the hearing dated November 23, 2010.

[7] General Statutes § 10-153f (c) (1) provides: "On the fourth day next following the end of the mediation session or on the one hundred thirty-fifth day prior to the budget submission date, whichever is sooner, the commissioner shall order the parties to report their settlement of the dispute or, if there is no settlement, to notify the commissioner of either their agreement to submit their dispute to a single arbitrator or the name of the arbitrator selected by each of them. Within five days of providing such notice, the parties shall notify the commissioner of the name of the arbitrator if there is an agreement on a single arbitrator appointed to the panel pursuant to subdivision (3) of subsection (a) of this section or agreement on the third arbitrator appointed to the panel pursuant to said subdivision. The commissioner may order the parties to appear before said commissioner during the arbitration period. If the parties have notified the commissioner of their agreement to submit their dispute to a single arbitrator and they have not agreed on such arbitrator, within five days after such notification, the commissioner shall select such single arbitrator who shall be an impartial representative of the interests of the public in general. If each party has notified the commissioner of the name of the arbitrator it has selected and the parties have not agreed on the third arbitrator, within five days after such notification, the commissioner shall select a third arbitrator, who shall be an impartial representative of the interests of the public in general. If either party fails to notify the commissioner of the name of an arbitrator, the commissioner shall select an arbitrator to serve and the commissioner shall also select a third arbitrator who shall be an impartial representative of the interests of the public in general. Any selection pursuant to this section by the commissioner of an impartial arbitrator shall be made at random from among the members appointed under subdivision (3) of subsection (a) of this section. Arbitrators shall be selected from the panel appointed pursuant to subsection (a) of this section and shall receive a per diem fee determined on the basis of the prevailing rate for such services. Whenever a panel of three arbitrators is selected, the chairperson of such panel shall be the impartial representative of the interests of the public in general."

We note that § 10-153f was amended by No. 11-125, § 1, of the 2011 Public Acts, which made certain changes to the statute that are not relevant to this appeal. For purposes of clarity, unless otherwise noted, we refer to the current revision of the statute.

[8] General Statutes § 10-153f (a) provides in relevant part: "There shall be

in the Department of Education an arbitration panel of not less than twenty-four or more than twenty-nine persons to serve as provided in subsection (c) of this section. The Governor shall appoint such panel, with the advice and consent of the General Assembly, as follows: (1) Seven members shall be representative of the interests of local and regional boards of education and shall be selected from lists of names submitted by such boards; (2) seven members shall be representative of the interests of exclusive bargaining representatives of certified employees and shall be selected from lists of names submitted by such bargaining representatives; and (3) not less than ten or more than fifteen members shall be impartial representatives of the interests of the public in general and shall be residents of the state of Connecticut, experienced in public sector collective bargaining interest impasse resolution and selected from lists of names submitted by the State Board of Education. . . . Each member of the panel shall serve a term of two years, provided each arbitrator shall hold office until a successor is appointed and, provided further, any arbitrator not reappointed shall finish to conclusion any arbitration for which such arbitrator has been selected or appointed. Arbitrators may be removed for good cause. If any vacancy occurs in such panel, the Governor shall act within forty days to fill such vacancy in the manner provided in section 4-19. Persons appointed to the arbitration panel shall serve without compensation but each shall receive a per diem fee for any day during which such person is engaged in the arbitration of a dispute pursuant to this section. The parties to the dispute so arbitrated shall pay the fee in accordance with subsection (c) of this section."

[9] Prior to oral argument before this court, we directed the parties to be prepared to address the question of whether the plaintiff was aggrieved by the judgment of the trial court, in light of the fact that the commission's order lists as respondents only the department and the "Contract Arbitration Panel." Despite the failure of the commission's order to list the individual arbitrators as respondents, we conclude that the plaintiff is aggrieved by the judgment and, therefore, has standing to appeal.

"The fundamental test for determining [classical] aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all the members of the community as a whole. Second, the party claiming aggrievement must successfully establish that the specific personal and legal interest has been specially and injuriously affected by the decision." (Internal quotation marks omitted.) *Bongiorno Supermarket, Inc.* v. *Zoning Board of Appeals*, 266 Conn. 531, 539, 833 A.2d 883 (2003).

Although the commission's order imposed a responsibility on the "respondents" to provide a transcript, at their expense, to the complainants, the newspaper and Moore, and the commission's order does not list the individual arbitrators as "respondents," at the time that the order was issued, the "contract arbitration panel" no longer existed. The panel was authorized by § 10-153f, which provides for the creation of such panels for a single purpose, to arbitrate a particular dispute under the TNA. Once the arbitration proceedings were completed, there was no longer any statutory authorization for the panel to continue to exist and function. Accordingly, the commission's order imposed a legal obligation on the individual arbitrators, including the plaintiff, to comply with that order.

In dismissing the appeal, the trial court recognized that the commission's order imposed a legal obligation on the individual arbitrators. The court modified the commission's order regarding the provision of the transcript to the defendants to require the department to be solely responsible for the *cost* of the transcript. The court did not, however, modify the commission's order insofar as it required the individual arbitrators to share with the department the responsibility of *providing* the transcript to the defendants.

Because the commission's order, as modified by the trial court, obligates the individual members of the arbitration panel to share in the responsibility of providing the transcript to the defendants, the plaintiff has demonstrated that he has a specific personal and legal interest in the subject matter of this decision, and that this interest has been specially and injuriously affected by the decision of the commission. Accordingly, we conclude that the plaintiff has established aggrievement.

[10] General Statutes (Supp. 2014) § 1-200 (1) (A) was formerly codified as General Statutes (Rev. to 1991) § 1-18 (a). The only relevant differences between the two statutes are that the current statute was amended after this court's decision in *Election Review Committee of the Eighth Utilities District* in order to add the phrase "or created by" and to further clarify

that the term "judicial office" includes the division of Public Defender Services. General Statutes (Supp. 2014) § 1-200 (1) (A).

As explained more fully in this opinion, we conclude that the arbitration panel neither constitutes a committee created by the department nor, as the trial court determined, the functional equivalent of the department, because the arbitration pool consists of individuals placed on a list by the governor and the panel is not selected by the department. The department serves as a mere repository of the list. Accordingly, we conclude that the inclusion of the term "created by" in § 1-200 (1) (A) is not relevant to the present case.

[11] In *State Board of Labor Relations* v. *Freedom of Information Commission*, 244 Conn. 487, 500, 709 A.2d 1129 (1998), in considering General Statutes § 31-100, we recognized the importance of privacy in the arbitration process. We observed that "[i]t is not disputed that arbitration conducted with private arbitrators may be closed to the public. If proceedings before the mediation board were required to be conducted publicly, there would be a significant difference between arbitration before that body and privately conducted arbitration. Indeed, the testimony at trial indicated that requiring proceedings before the mediation board to be open to the public would create a significant deterrent to parties considering arbitration before the mediation board. This, in turn, would work to defeat the legislature's goal of providing low cost arbitration services as an effective alternative to private arbitrators to facilitate the resolution of labor disputes.

"Concomitantly, an interpretation of [General Statutes] § 1-18a (b) that excludes grievance arbitration proceedings from the definition of meetings does not impede the goals underlying the [FOIA]. The [FOIA] was enacted for the purpose of assuring public access to information relating to the activities of public agencies. Although the legislature specifically exempted certain types of activities from the definition of meeting under § 1-18a (b), it did not specifically mention grievance arbitration proceedings in that subsection. We presume, however, that it enacted § 1-18a (b) with knowledge of the existence of § 31-100. *Commission on Human Rights & Opportunities* v. *Truelove & Maclean, Inc.*, [238 Conn. 337, 346–47, 680 A.2d 1261 (1996)]. It is reasonable to conclude, therefore, that the legislature decided that the benefit associated with the confidentiality of grievance arbitration proceedings outweighed the benefit to be derived from granting public access to these proceedings, and, consequently, it did not amend or overrule § 31-100 so as to include grievance arbitration proceedings within the definition of meeting under § 1-18a (b). Thus, the exclusion of grievance arbitration proceedings from the definition of meeting is within the contemplation of the [FOIA]." Id., 500–501.

Although the statute under consideration in *State Board of Labor Relations* v. *Freedom of Information Commission*, supra, 244 Conn. 487, was different than § 10-153f, the reasoning applies with equal force. If the legislature intended these proceedings to be public it could have easily stated so in the statute.