CYRILLE A. BELISLE *vs.* THE BERKSHIRE ICE COM-
PANY.
CYRILLE A. BELISLE *vs.* THE NAUGATUCK VALLEY ICE
COMPANY.

Third Judicial District, New Haven, January Term, 1923.
WHEELER, C. J., BEACH, CURTIS, BURPEE and KEELER, Js.

Interest is recoverable in civil actions as damages for the detention of money after it becomes payable (§ 4797), and therefore it should be allowed upon the unpaid price of merchandise sold and delivered, during the period of default, which begins, in sales for cash, at the time of the sale or at least on delivery.

There can be no anticipatory breach of a contract by one party without the acquiescence of the other.

In a suit for damages for nonacceptance of goods contracted for, the measure of damages (§ 4730) is the estimated loss directly or naturally resulting, in the ordinary course of events, from the

Belisle *v.* Berkshire Ice Co.

buyer's breach of contract. This damage may include loss of expected profits, and, where there is no available market for the goods, as in the present case, may be measured by the entire contract price.

The defendant Naugatuck Valley Ice Company on July 18th, 1919, agreed with the plaintiff to take of him seven thousand tons of ice at $3.75 a ton, which he had purchased of the American Ice Company at $3 a ton, and to remove the ice before November 1st of that year. After the receipt of something over twelve hundred tons, the defendant, on September 3d, notified the plaintiff that it would not accept any more of the ice, and the plaintiff endeavored to sell it elsewhere but was unable to do so. In an action to recover damages for the breach of this contract, it was *held* that inasmuch as the plaintiff had not acquiesced in or accepted the defendant's repudiation of the contract in September, there was no breach of the agreement until November 1st, 1919; that so long as the contract remained in force the plaintiff had no ice which he could sell, and therefore damages were to be assessed as of November 1st and not upon any earlier date as contended by the defendant; and that in the absence of any available market for the ice then, the plaintiff was entitled to recover the actual damages which he had suffered, including the profit of seventy-five cents a ton which he would have made had the defendant fulfilled its contract.

Prior to the trial of this action the American Ice Company, having received $3 a ton for the ice taken, released the plaintiff from his obligation to take the remainder of the ten thousand tons, on condition that he waive all claim against the Naugatuck Valley Ice Company for damages which he, the plaintiff, would otherwise have had to pay to the American Ice Company for ice not taken before November 1st, and this the plaintiff agreed to do. *Held* that but for such arrangement, the damages recoverable of the defendant would have been measured by the full contract price of $3.75 a ton, as the ice, after November 1st, was of no pecuniary value to the plaintiff.

In awarding damages for the breach of a contract like the one in question, the law aims to put the injured party, so far as it can be done by money, in the same position he would have been in if the contract had been performed.

An appellant cannot convert what are in reality questions of fact, into questions of law by calling them such in his assignments of error.

Argued January 17th—decided April 4th, 1923.

ACTIONS to recover, in one case the balance of the purchase price of two boat-loads of ice sold and de-

livered to the Berkshire Ice Company, and, in the other, the contract price of ice sold and delivered to the Naugatuck Valley Ice Company, and also damages for its wrongful refusal to accept the rest of the seven thousand tons of ice it had agreed to take of the plaintiff before November 1st, 1919, brought to and tried together by the Superior Court in Fairfield County, *Avery, J.*; facts found and judgment rendered for the plaintiff for $3,223 in the one case, and for $6,764 in the other, from which the respective defendants appealed. *No error in either case.*

These cases were tried together under a stipulation that the evidence should be applied to both cases upon all the material issues to which it was applicable. One person acted for, and under the authority of, both defendants in making the contracts involved in these actions, and in all transactions between them and the plaintiff.

On April 8th, 1919, the plaintiff, who is a retail ice dealer in Providence, Rhode Island, made a written contract with the American Ice Company to purchase 10,000 tons of ice at $3 a ton, to be loaded by the Ice Company in vessels furnished by the plaintiff alongside the Ice Company's docks on the Kennebec River and Boothbay, Maine. This contract contained stipulations that the quality of ice should be such as the Ice Company then had in its houses in those places, and that it should be loaded at such of those houses as might be convenient for the Ice Company at the time when the plaintiff's order for each cargo was given; and that all of the ice purchased should be loaded on or before the first day of November, 1919, and that the plaintiff would be held liable for any remainder of this ice not taken by him before that day unless he should have relieved himself of that responsibility by written notice before August 1st, 1919. The con-

tract required a payment by the plaintiff of $2,000 in cash, and that the ice in each cargo shipped should be paid for by a sight draft attached to the bill of lading until all but 666 2/3 tons had been shipped, and this remainder would then be shipped without a draft.

Under this contract the plaintiff had received only 1,000 tons of ice before July 18th, 1919. On that day the defendant, the Berkshire Ice Company, bought from the plaintiff two barge loads of the remainder of the ice contracted for by the plaintiff, at $4 a ton f. o. b. the loading places in Maine. These barge loads were delivered to, received and accepted by that company, and sold by it in the regular course of its business. The shipment by the first barge was paid for in full. The ice on the second barge was received on August 29th, 1919, and this defendant sent its check in payment therefor; but afterward it stopped payment on the check and has ever since refused to pay for this shipment. It contained 1,166 tons, for which at the agreed price of $4 a ton the sum of $4,664 became due to the plaintiff. Of this amount, this defendant paid on June 1st, 1921, $2,000, under a stipulation that this payment should be without prejudice to the rights of either party to this action then pending. There was no evidence that this defendant sold the ice which it received under its contract with the plaintiff, at a lower price than it obtained for other ice during the season of 1919. The trial court ordered judgment for the plaintiff to recover the purchase price of the ice in the second shipment which this defendant received, being $4,664, with interest thereon from November 1st, 1919, to June 1st, 1921, when the payment of $2,000 was made under stipulation, and interest on the remainder of $2,664 from that date to February 24th, 1922, the date of the judgment; total $3,223.85.

On July 18th, 1919, the defendant, the Naugatuck

Valley Ice Company, also made a contract with the plaintiff to buy 7,000 tons of this ice which he had agreed to take·from the American Ice Company and which was still undisposed of. This contract was drawn up by the agent of the Naugatuck Valley Ice Company after he had read the contract between the plaintiff and the American Ice Company, and after he had been informed that the plaintiff had seen none of the ice except the 1,000 tons he had already received, and upon no representations as to quality except that the ice received was of good, merchantable quality. Among the provisions of this agreement were the following: that the Naugatuck Valley Ice Company would "pay $3.75 per ton, f. o. b. loading port"; would "pay bill of lading at $3 per ton and send" the plaintiff "the balance of 75c per ton, and pay $2,000 down to bind the contract"; and would "take this ice before November 1st." In compliance with these terms, this defendant paid the plaintiff $2,000 on July 18th, 1919, and sent a barge to the designated loading places in Maine for a load of ice. This barge was loaded between August 21st and 29th, 1919, with 1,238 tons of ice, and arrived in Bridgeport on September 9th, 1919, when this cargo was accepted by this defendant and afterward sold by it in the regular course of its business. There was no evidence that the price obtained for this ice was lower than the price of other ice sold during the same season. This defendant has refused to pay for this load of ice, but on June 1st, 1921, made a part payment of $1,000 under a stipulation that this payment should not prejudice any right of either party in this action then pending. The trial court directed judgment to be entered for the plaintiff to recover from this defendant the purchase price of this ice, 1,238 tons at $3.75 a ton, amounting to $4,642.50, less the $2,000 paid when the contract was made, with interest on

the remainder from November 1st, 1919, to June 1st, 1921; and less the $1,000 paid on that day under stipulation, with interest on the then remainder from that date to February 24th, 1922, the date of judgment.

All the ice delivered to and accepted by the defendants under their contracts was good, merchantable ice, equal in quality to that generally available for the trade throughout the season of 1919. Neither defendant offered any evidence of loss or damage resulting to it by reason of the quality of the ice delivered.

On August 29th, 1919, the Naugatuck Valley Ice Company notified the plaintiff by letter that it would not want any more of his ice after it had received the boats already chartered, meaning the three barges hereinbefore mentioned. On September 3d, 1919, this defendant sent the following letter to the plaintiff: "This will notify you that we will not accept any more of your ice after the barge we have chartered arrives. The ice you are shipping us is not as you represented it to be but you are sending ice that is not merchantable. We have requested you to come and inspect same for yourself but as yet you have failed to do so and we cannot use any more of it." The plaintiff received this letter September 7th or 8th, 1919, and thereupon made efforts to resell the ice which this defendant refused to take, but did not succeed, and was not able to fulfil his contract with the American Ice Company to take 10,000 tons of ice before November 1st, 1919. The quantity which he could not take was 5,619 tons. After the bringing of these actions and before the trial, the American Ice Company, having been paid $3 a ton for the ice taken, released the plaintiff from his obligation to take the remainder, on condition that he waive all claims against this defendant for damages based upon the amount which he would

otherwise have to pay to the American Ice Company on account of the ice not taken before November 1st, 1919. Therefore the court fixed the plaintiff's damages because of this defendant's breach of contract at 75 cents a ton of the ice it had refused to take, and found that the plaintiff was entitled to recover, in addition to the contract price of the ice sold and delivered, the sum of $4,214.25, as damages for nonacceptance of undelivered ice, with interest thereon from November 1st, 1919, to the date of judgment.

*Arthur M. Marsh* and *Philo C. Calhoun*, for the appellants (defendants).

*William H. Comley*, for the appellee (plaintiff).

BURPEE, J. The only question presented in the appeal of the Berkshire Ice Company is whether, if the ice taken and disposed of by that company in the course of its business was of the quality contracted for, the trial court erred in allowing interest on the contract price from November 1st, 1919, to the date of the partial payment made without prejudice on June 1st, 1921, and thence on the remainder to the date of judgment. The court has found from the evidence that this ice was of that quality, and we have not been called on to correct its finding in that particular. The appellant does not contend that under such conditions it is not liable to pay any interest; it complains only about the time fixed as the starting point for reckoning the interest. By the terms of the agreement this sale was made for cash. This defendant knew that the plaintiff by his contract with the American Ice Company was bound to pay promptly the sight draft attached to the bill of lading on each cargo shipped, and in the light of this knowledge this defendant drew up its con-

tract with the plaintiff in which it agreed to pay this draft and send the balance of 75 cents a ton to the plaintiff. It appears that it did this upon the first shipment, but decided not to do so on the second, which it received on August 28th, 1919. The money was due and payable then, but the defendant has retained and enjoyed its use ever since that day. "It is difficult on principle to see why he [the plaintiff] should not recover, as compensation for that detention, damages measured by the legal rate of interest upon the sum so detained for that time." *Healy* v. *Fallon,* 69 Conn. 228, 235, 37 Atl. 495; *Loomis* v. *Gillett,* 75 Conn. 298, 53 Atl. 581. "For the buyer's default in paying for the goods, the seller may recover interest upon the unpaid price during the period of default, which begins, in sales for cash, at the time of the sale, or at least on delivery." Elliott, Conn. Law of Sales, 691. Our statute provides that interest may be allowed and recovered in civil actions as damages for the detention of money after it becomes payable. General Statutes, § 4797. It would seem, therefore, that the court should have reckoned the interest from August 28th, 1919, instead of November 1st, 1919. But the court below has found that the parties agreed that interest might be computed from November 1st, 1919, and this defendant has not been aggrieved by this computation, and has now no sufficient reason to ask that the judgment be disturbed in this respect.

Turning to the appeal of the Naugatuck Valley Ice Company, it is evident that, for the reasons just stated, this defendant cannot complain of that part of the judgment which includes the purchase-price of the barge-load of ice which it received and accepted on September 7th, 1919. Payment was due on that day. The court allowed interest on the sum due for this ice from November 1st instead of the earlier date of

September 7th, 1919. This defendant manifestly was not aggrieved by this error.

The principal point raised and pressed by this defendant in its appeal, relates to the damages allowed for this defendant's refusal to accept the remainder of the ice. The appellant contends that this point depends on the date which shall be taken as the date of the breach of its contract, if it made any breach, and upon proof of the market value of ice at the date of that breach or within a reasonable time thereafter. It argues that the date of the breach was August 28th, 1919, when it notified the plaintiff that it did not want any more ice, and that on that day, or within a reasonable time thereafter, it became the duty of the plaintiff to find a market and to resell the unaccepted ice at the best price obtainable; and that, if he failed to do this, he could not recover the damages allowed in the judgment unless he had proved that there was no available market after September 7th, 1919, when he received this defendant's notice that it would not accept any more ice, and before November 1st, 1919, when the plaintiff ceased to have any ice to deliver to this defendant, in which the plaintiff might have sold the undelivered ice at a price equal to or greater than the contract price. This argument rests on the assumption that this defendant's notice of its refusal to accept the remainder of the ice by itself effected a breach of the contract on the day it was received. That assumption is not supported by the law applicable to the facts of this case. Here was an executory contract, to be performed at any time before November 1st, 1919. On September 3d, 1919, this defendant absolutely, distinctly and unequivocally refused to perform its promise, and gave unmistakable evidence of its renunciation. But this did not make a breach of this contract. It remained a subsisting contract unless

and until the other party, the plaintiff, gave equally unmistakable evidence of his acquiescence in or acceptance of the defendant's repudiation. This court said in *Home Pattern Co.* v. *Mertz Co.*, 86 Conn. 494, 501, 86 Atl. 19: "The repudiation of the contract without the acquiescence of the plaintiff did not put an end to the contract. The plaintiff could still treat it as subsisting and, notwithstanding the notice of repudiation, assume that the defendant would perform its part of the contract when the time for such performance should arrive. Had it chosen to consent to the renunciation, it might have done so and brought an action at once for breach of the contract, but there can be no anticipatory breach of a contract by one party without the acquiescence of the other. A breach by one party alone can only occur after the time for performance has arrived. *Frost* v. *Knight*, L. R. 7 Exch. 111, 112; *Johnstone* v. *Milling*, L. R. 16 Q. B. D. 460, 467; *Wells* v. *Hartford Manilla Co.*, 76 Conn. 27, 35, 36, 55 Atl. 599; *Kadish* v. *Young*, 108 Ill. 170, 183; *Bernstein* v. *Meech*, 130 N. Y. 354, 358, 29 N. E. 255." The record before us does not show that the plaintiff had accepted or acquiesced in this defendant's repudiation of this contract. Therefore it was never broken. By its terms it remained in uninterrupted existence until November 1st, 1919. At any time until that day this defendant, notwithstanding its letters to the plaintiff, had the right to take the entire quantity of ice specified in its contract. By its refusal to exercise that right within the time limited, it broke its contract on the last day fixed. The trial court correctly held that the breach was made on November 1st, 1919. And the record does not disclose that this defendant made any claim of law during the trial, or has made any assignment of error on appeal, which challenges that decision. There could be no market for this ice avail-

able to the plaintiff, because by reason of his contract with this defendant, so long as it remained in force, the plaintiff had no ice which he could sell. Until November 1st, 1919, he was stripped of all power to deliver this ice to any one but this defendant. On November 1st, 1919, he lost all right, title and interest in this ice.

When he received notice of this defendant's repudiation of its contract, the plaintiff had the right to choose whether he would adopt the repudiation, or would treat the contract as still subsisting and assume that this defendant would perform its part before the time for such performance should expire. He chose to follow the latter course. Hence a breach of the contract by this defendant alone did not occur until the time for performance by it had come and passed, and not until then would a cause of action on the contract arise. *Wells* v. *Hartford Manilla Co.*, 76 Conn. 27, 35, 55 Atl. 599; *Home Pattern Co.* v. *Mertz Co.*, 86 Conn. 494, 501, 86 Atl. 19. This defendant continued to refuse to accept and pay for the remainder of the ice according to its agreement. The court below has found that its refusal was wrongful, and that conclusion is supported by the circumstances revealed by the record. Therefore the plaintiff may maintain an action gainst this defendant for damages for nonacceptance. General Statutes, § 4730. This statute further provides that "the measure of damages is the estimated loss directly or naturally resulting, in the ordinary course of events, from the buyer's breach of contract." As we have said, under the conditions existing in this case, there was no market for this ice which was available by the plaintiff at the time when the refusal went into effect. Moreover, the court below has found the fact that there was no such market, and the evidence printed in the record sufficiently supports that con-

clusion. Since there was no market, the plaintiff should recover the actual damages which he has suffered. *Jordan, Marsh & Co.* v. *Patterson*, 67 Conn. 473, 480, 35 Atl. 531. The trial court estimated the loss to be the contract price of the unaccepted ice. Manifestly that loss directly resulted from this defendant's nonacceptance of that ice. The plaintiff was liable to pay the American Ice Company $3 a ton for this ice, and would have suffered that loss but for the release given to him on condition that he waive his claim for damages against this defendant on this account. It seems equally plain that he has lost the profits of 75 cents a ton which he would have made if this defendant had fulfilled the contract. They were not remote, uncertain or speculative. They were fixed by the contract, and they were lost only because this defendant broke the contract. The loss of profits is always a proper subject for compensation if such a loss can be shown with reasonable certainty. *Churchill Grain & Seed Co.* v. *Newton*, 88 Conn. 130, 134, 89 Atl. 1121; 2 Mechem on Sales, §§ 1705, 1707. "The general intention of the law giving damages in an action for the breach of a contract like the one here in question, is to put the injured party, so far as it can be done by money, in the same position that he would have been in if the contract had been performed." *Jordan, Marsh & Co.* v. *Patterson*, 67 Conn. 473, 480, 35 Atl. 531. After November 1st, 1919, the undelivered ice had no pecuniary value for the plaintiff. In such a case, damages are measured by the entire contract price. *Allen* v. *Jarvis*, 20 Conn. 38, 48; Williston on Sales, p. 969; Elliott, Conn. Law of Sales, p. 609, note 17.

We think the court below made no error in estimating the damages in this case.

The first and second reasons of appeal refer to the finding of the court below that there was no available

market, and its computation of damages. For the reasons we have already stated, there is no merit in these reasons.

Seven other reasons of appeal specify errors in over-ruling what are called questions of law raised by the appellant before the trial court. Really these questions are questions of fact; for instance, whether the court erred in finding that the ice delivered to the defendants was of the quality contracted for, whether the defendants had any knowledge of the quality of the ice the plaintiff had to sell except from his representations, whether the plaintiff made any false representations concerning the quality of the ice, and similar matters. These are not proper assignments of error. So far as they question conclusions of fact, it appears that those conclusions were warranted by the evidence laid before us.

Another reason of appeal complains of the finding that the plaintiff, after he received notice of the repudiation of the contract, had no duty to transport the remainder of the ice from Maine to Rhode Island and to sell it there. There was no error in this ruling, for the reasons we have already indicated.

The remaining reasons of appeal relate to the refusal of the trial court to correct and add to its finding. Some of these changes were not warranted by the evidence, and the others would not affect the conclusions we have reached.

There is no error in either case.

In this opinion the other judges concurred.