******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

THOMAS BRENNAN *v.* BRENNAN
ASSOCIATES ET AL.
(SC 19116)
(SC 19150)

Rogers, C. J., and Palmer, Zarella, Eveleigh, Espinosa,
Robinson and Vertefeuille, Js.

*Argued September 24, 2014—officially released May 5, 2015*

*J. Christopher Rooney*, with whom were *John A. Farnsworth* and, on the brief, *Anne D. Peterson*, for the appellants in Docket No. SC 19116 and the appellees in Docket No. SC 19150 (defendants).

*William H. Clendenen, Jr.*, with whom were *Maura A. Mastrony* and, on the brief, *Kevin Shea* and *James Coyne*, for the appellee in Docket No. SC 19116 and the appellant in Docket No. SC 19150 (plaintiff).

*Opinion*

ZARELLA, J. The present appeals arise from the protracted and acrimonious breakup of a partnership that was the subject of a prior appeal to this court. In *Brennan* v. *Brennan Associates*, 293 Conn. 60, 72, 977 A.2d 107 (2009) (*Brennan I*), we upheld the judicial dissociation of the plaintiff, Thomas Brennan, from the named defendant, Brennan Associates (partnership). The plaintiff subsequently instituted the present action to have his interest in the partnership valued and bought out by the partnership. The partnership and the remaining partners, the defendants Alexander Aiello, Serge Mihaly, and the coadministrators of the estate of former partner Richard Aiello,[1] who died prior to this litigation, now appeal from the judgment of the trial court, which awarded the plaintiff approximately $6.9 million for his interest in the partnership, as well as approximately $3.5 million in interest on that award. The defendants claim that the trial court (1) should have valued the plaintiff's interest in the partnership as of 2009, when this court upheld the plaintiff's dissociation in *Brennan I*, instead of 2006, when the trial court rendered the judgment of dissociation, (2) incorrectly determined that interest accrued on the plaintiff's buyout award from the date of the judgment of dissociation, and (3) in valuing the partnership, should have treated the defendants' attorney's fees as a liability of the partnership. The plaintiff filed a separate appeal from the judgment of the trial court, claiming that the trial court should have awarded him offer of compromise interest in addition to the sums already awarded. We agree with the defendants on their first two claims and decline to review their third claim because the record is inadequate for review. Accordingly, we reverse in part the trial court's judgment and remand the case for further proceedings. Because we reverse in part the trial court's judgment and the plaintiff's interest must be valued again, we cannot resolve the plaintiff's claim and therefore dismiss the appeal in Docket No. SC 19150.

The record reveals the following undisputed facts and procedural history, some of which are set forth in *Brennan I*. See id., 64–70. In 1984, the plaintiff entered into a general partnership agreement with Alexander Aiello, Richard Aiello and Mihaly to operate and manage a shopping center they owned in the town of Trumbull. The partnership operated successfully for twenty years before Richard Aiello passed away. Upon his death, the coadministrators of Richard Aiello's estate succeeded to his interest in the partnership, at which time animosity began to grow among the remaining partners. The subsequent litigation between the partners, separate from the present case, resulted in a judgment of dissociation against the plaintiff on September 27, 2006, pursuant to General Statutes § 34-355 (5) (C).[2] The plaintiff appealed from the judgment of dissociation, claiming,

inter alia, that he should be allowed to remain in the partnership. Consequently, the judgment of dissociation was automatically stayed pursuant to Practice Book § 61-11 (a).

While the plaintiff's appeal was pending, he remained actively involved in managing the partnership's business and continued to profit from it. Specifically, the plaintiff continued to solicit tenants for the shopping mall and to attend partnership meetings. The plaintiff also continued to receive approximately $49,000 per month in partnership profits, as he had prior to the judgment of dissociation. In total, the plaintiff received a total of $1,702,400 in partnership profits while his appeal was pending. In an attempt to terminate the plaintiff's control over the partnership, the defendants moved to partially terminate the automatic stay that was in place pending appeal to enforce the judgment of dissociation, but the motion was denied. The plaintiff's appeal concluded on August 18, 2009, when, in *Brennan I*, this court affirmed the trial court's judgment of dissociation. Id., 93. The court also held that, under the Revised Uniform Partnership Act (RUPA), as incorporated in Connecticut's Uniform Partnership Act (partnership act), General Statutes §§ 34-300 through 34-399, when a partner is dissociated, only the dissociated partner can initiate the buyout process, not the trial court or the remaining partners. Id., 92–93.

Thus, shortly after the appeal in *Brennan I* concluded, the plaintiff instituted the present action under General Statutes § 34-362 to have the trial court value the partnership and his interest therein so that the partnership could buy him out. According to § 34-362 (b), a dissociated partner's interest should be valued as of the "date of dissociation . . . ." At trial, the parties disagreed on when the plaintiff had been dissociated from the partnership. The parties presented evidence that the partnership's assets had declined significantly in value between 2006 and 2009 while the plaintiff's appeal in *Brennan I* was pending. The plaintiff argued that his interest should be valued as of September 27, 2006, the day the trial court rendered the judgment of dissociation against him, before the partnership's assets had declined in value. In contrast, the defendants argued that the plaintiff's interest should be valued as of August 18, 2009, the date on which *Brennan I* was officially decided, which was after the partnership's assets had declined in value. After weighing the parties' arguments, the trial court adopted the plaintiff's position and valued the plaintiff's interest in the partnership as of September 27, 2006, the date the trial court rendered the judgment of dissociation, rather than on August 18, 2009, the date that judgment was affirmed by this court.

Using the date of September 27, 2006, the trial court valued the plaintiff's interest in the partnership at

$8,640,000. From that amount, the trial court subtracted $1,702,400 to account for the monthly payments that the plaintiff had received from the partnership while his appeal in *Brennan I* was pending. Accordingly, the trial court awarded the plaintiff a total of $6,937,600. The trial court also awarded the plaintiff interest on that sum starting from the date of dissociation, which, as we noted previously, the trial court had determined was September 27, 2006. The interest on the buyout award was approximately $3.5 million. In determining the plaintiff's award, the trial court rejected the defendants' request to offset the award by the amount the defendants had paid in attorney's fees as damages under General Statutes § 34-356 (c) or § 34-362 (c). The defendants appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.[3] We now address the defendants' claims in turn.

I

The defendants first claim that the trial court incorrectly determined that the plaintiff had been dissociated in 2006, when the judgment of dissociation was rendered, rather than in 2009, when that judgment was affirmed in *Brennan I* and, thus, improperly valued the partnership and the plaintiff's interest therein as of the earlier date. The defendants argue that the plaintiff could not have been dissociated from the partnership until the conclusion of his appeal in *Brennan I* because, until that point, the judgment of dissociation had been automatically stayed pursuant to Practice Book § 61-11 (a) and the plaintiff had continued to profit from and to participate in managing the partnership. In opposition, the plaintiff claims that, regardless of the defendants' ability to enforce the judgment of dissociation, he was dissociated in 2006 because that was when the "judicial determination" was made that he should be dissociated. General Statutes § 34-355 (5) (C). We agree with the defendants and conclude that the plaintiff was not dissociated from the partnership until the automatic stay was terminated upon the conclusion of his appeal in *Brennan I*.

To resolve this claim we must interpret the partnership act and, specifically, the term "date of dissociation" in § 34-362 (b). "[A]s with any question of statutory construction, our review is plenary . . . ." (Citation omitted.) *Brennan* v. *Brennan Associates*, supra, 293 Conn. 90. "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield

absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Gilmore* v. *Pawn King, Inc.*, 313 Conn. 535, 542–43, 98 A.3d 808 (2014). "The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Fairchild Heights, Inc.* v. *Amaro*, 293 Conn. 1, 9, 976 A.2d 668 (2009). An additional principle of statutory construction "that is relevant to this issue is that the legislature is always presumed to have created a harmonious and consistent body of law . . . . [T]his tenet of statutory construction . . . requires [this court] to read statutes together when they relate to the same subject matter . . . . Accordingly, [i]n determining the meaning of a statute . . . we look not only at the provision at issue, but also to the broader statutory scheme to ensure the coherency of our construction." (Internal quotation marks omitted.) *Brennan* v. *Brennan Associates*, supra, 90–91.

We begin our analysis by examining the relevant statutory provisions. The plaintiff brought this action under § 34-362, which provides that trial courts should value a dissociated partner's interest in the partnership as of the "date of dissociation . . . ." General Statutes § 34-362 (b). Section 34-362, however, does not define the term "date of dissociation." Accordingly, we look to the broader statutory scheme to determine when a partner's dissociation occurs. Section 34-355 sheds light on this question, as it provides the various grounds on which a partner may be dissociated. In this case, the plaintiff was dissociated under § 34-355, which provides in relevant part that "[a] partner is dissociated from a partnership upon the occurrence of . . . (5) . . . the partner's *expulsion by judicial determination* because . . . (C) the partner engaged in conduct relating to the partnership business which makes it not reasonably practicable to carry on the business in partnership with the partner . . . ." (Emphasis added.)

We conclude that the language of § 34-355 (5) (C) is plain and unambiguous and indicates that a partner is dissociated under that provision when the partner is expelled after a judicial determination is made that the partner's conduct has made it not reasonably practicable to carry on the business of the partnership. The plain language of § 34-355 (5) (C) makes clear that a partner's dissociation under that provision occurs not merely upon a judicial determination that the partner has engaged in improper conduct, as the plaintiff suggests, but, rather, upon the partner's "*expulsion* by judi-

cial determination" that such grounds exist. (Emphasis added.) General Statutes § 34-355 (5). Thus, § 34-355 (5) indicates that the "date of dissociation," for the purpose of valuing the partnership under § 34-362 (b), is the date that the dissociated partner is actually expelled from the partnership, not the date that the judgment of dissociation is rendered.[4]

Other provisions of the partnership act support the conclusion that dissociation occurs upon a partner's expulsion from a partnership. For instance, § 34-357, which addresses the effects of dissociation, provides that, "[u]pon a partner's dissociation . . . [t]he partner's right to participate in the management and conduct of the partnership business terminates . . . ." General Statutes § 34-357 (b) (1). Likewise, in *Brennan I*, we recognized that a partner's dissociation "denote[s] the change in the relationship caused by a partner's ceasing to be associated in the carrying on of the business." (Internal quotation marks omitted.) *Brennan* v. *Brennan Associates*, supra, 293 Conn. 66 n.4, quoting Rev. Unif. Partnership Act of 1997, § 601, comment (1), 6 U.L.A. (Pt. I) 164 (2001). Given that the primary consequence of a partner's dissociation is that the partner loses his right to participate in the partnership, it logically follows that a partner is *not* dissociated until he is expelled and can no longer lawfully participate in managing the partnership.

Accordingly, we must determine when the plaintiff was expelled from the partnership in order to discern the proper date of dissociation for valuation purposes under § 34-362 (b). To make that determination, however, we must consider the effect of the automatic stay that was in place after the judgment of dissociation was rendered against the plaintiff, and read the partnership act in conjunction with Practice Book § 61-11 (a), which stays enforcement of all civil judgments pending an appeal. Specifically, Practice Book § 61-11 (a) provides in relevant part that, "[e]xcept where otherwise provided by statute or other law, proceedings to enforce or carry out the judgment or order shall be automatically stayed until the time to take an appeal has expired. If an appeal is filed, such proceedings shall be stayed until the final determination of the cause. . . ."[5] Accordingly, when a partnership obtains a judgment of dissociation against a partner, the partnership cannot enforce that judgment until the time to take an appeal has expired or, if the outgoing partner appeals from the judgment of dissociation, until the conclusion of the appeal. Thus, while an appeal is pending, the partner against whom the judgment of dissociation has been rendered maintains the right to continue participating in and benefiting from the partnership and cannot yet be expelled and dissociated.

This is precisely what occurred in the present case. It is undisputed that, after the judgment of dissociation

was rendered against the plaintiff, the judgment was stayed pursuant to Practice Book § 61-11 (a), and the plaintiff's participation in the partnership did not change. The plaintiff continued to attend partnership meetings, vote at those meetings, and communicate with prospective and existing tenants at the shopping center owned by the partnership while his appeal was pending. The plaintiff also received approximately $1.7 million in partnership profits between the time that the judgment of dissociation was rendered and the conclusion of his appeal in *Brennan I*. The defendants attempted to expel the plaintiff from the partnership while the appeal in *Brennan I* was pending by moving to partially terminate the automatic stay, but their motion was denied. Thus, due to the automatic stay, the plaintiff was still " 'carrying on . . . the business' " of the partnership while his appeal in *Brennan I* was pending and therefore had not yet been dissociated from the partnership. *Brennan* v. *Brennan Associates*, supra, 293 Conn. 66 n.4. The plaintiff was only dissociated once *Brennan I* was officially decided and the time to file a motion for reconsideration had expired, at which point the automatic stay terminated and the judgment of dissociation became effective;[6] it was at that point that the plaintiff was expelled from the partnership.

We reject the plaintiff's argument to the contrary regarding the effect of the automatic stay on the judgment of dissociation. The plaintiff argues that he was dissociated on the date that the judgment of dissociation was rendered because the automatic stay does not affect the finality of an underlying judgment. Although it is undoubtedly true that an automatic stay does not affect the underlying judgment, the plaintiff's argument misses the point. The automatic stay, as the plaintiff acknowledges, "denies [a successful litigant] the immediate fruits of his or her victory . . . in order to protect the full and unhampered exercise of the right of appellate review." (Internal quotation marks omitted.) *Preisner* v. *Aetna Casualty & Surety Co.*, 203 Conn. 407, 414, 525 A.2d 83 (1987). In the present case, the fruits of the defendants' victory at trial in *Brennan I* that they were denied pending the plaintiff's appeal were the plaintiff's expulsion from the partnership. Thus, it is both true that the judgment of dissociation rendered against the plaintiff was a final judgment and that the judgment did not become effective until the automatic stay was terminated. The plaintiff's argument therefore has no merit.[7]

In addition to the fact that the judgment of dissociation was stayed as a matter of law, there are strong policy reasons for deciding that the plaintiff was not dissociated until the conclusion of his appeal in *Brennan I*. The partnership act reflects the policy that a partner should not be allowed to participate in a partnership when he does not share in the risk that the

partnership will lose value. For instance, when a partner is dissociated, that partner no longer shares in the risk of loss to the partnership because his interest in the partnership is valued as of "the date of dissociation . . . ." General Statutes § 34-362 (b). Thus, regardless of what happens to the value of the partnership's assets *after* the partner is dissociated, the amount for which the dissociated partner will be bought out remains unchanged. In conjunction with this valuation provision, the partnership act also expressly bars a dissociated partner from participating in the business of the partnership after he is dissociated. General Statutes § 34-357 (b) (1) (providing that, upon partner's dissociation, "[t]he partner's right to participate in the management and conduct of the partnership business terminates"). The combination of these provisions reflects the policy that a partner should not be allowed to participate in a partnership in which he has no economic interest at stake.

This policy, in our view, makes good sense. A partner's economic interests should be aligned with those of the partnership to ensure that he acts with the best interests of the partnership in mind. It is not difficult to imagine the problems that would arise if a dissociated partner's interest were valued at the time of the judgment of dissociation, instead of the time the partner was actually expelled from the partnership, and the partner was allowed to continue managing the partnership while his appeal is pending. For instance, an outgoing partner would be deprived of sharing in any value he added to the partnership through his good faith efforts to run the business during the pendency of his appeal because his buyout award would be locked as of the date of the judgment of dissociation. Conversely, a disgruntled, outgoing partner could take a nonmeritorious appeal for the sole purpose of intentionally sabotaging the business of the partnership, knowing that he is not risking a diminution of his interest. These scenarios are easily prevented by valuing a dissociated partner's interest as of the date of his actual expulsion, which ensures that the dissociated partner continues to have an economic stake in the partnership as long as he has the right to continue participating in managing the partnership.

In sum, the plaintiff in the present case was dissociated from the partnership on August 29, 2009, because that was the date on which the parties could no longer file a motion for reconsideration in *Brennan I*. See footnote 6 of this opinion. On that date, the automatic stay terminated, and the judgment of dissociation became effective, causing the plaintiff's expulsion. Accordingly, the trial court should have valued the plaintiff's interest in the partnership as of August 29, 2009, the date when *Brennan I* was finally resolved.[8] We therefore remand the case for further proceedings at which the trial court should value the plaintiff's inter-

est in the partnership as of August 29, 2009.

## II

We next address the defendants' claim that the trial court improperly awarded the plaintiff interest on his $6,937,600 buyout award from the date of the judgment of dissociation in 2006. The following additional facts and procedural history are relevant to this claim.

At trial, there was no question that the partnership was obligated to buy the plaintiff out after his dissociation, but the parties disagreed over *when* the partnership was obligated to buy him out. Under normal circumstances, a dissociated partner is entitled to immediate payment of his interest in the partnership under § 34-362 (b). If, however, a partner wrongfully dissociates from a partnership for a definite term, as the plaintiff did in the present case,[9] he is not entitled to payment until the expiration of the partnership's term pursuant to § 34-362 (h), unless immediate payment would "not cause undue hardship to the business of the partnership." General Statutes § 34-362 (h). The trial court concluded that immediate payment to the plaintiff would not cause undue hardship to the partnership and, pursuant to § 34-362 (h), ordered the partnership to pay the plaintiff $6,937,600 in four payments over four years.[10]

After concluding that the plaintiff was entitled to an early payment of his buyout award under § 34-362 (h), the trial court determined that the plaintiff also was entitled to interest on that award under § 34-362 (b), which provides that interest accrues on a dissociated partner's award from the date of dissociation. The trial court ordered the defendants to pay interest at an annual rate of 8 percent[11] on the plaintiff's $6,937,600 buyout award "from the date of dissociation to the date of payment . . . ." Given that the trial court already had determined that the date of dissociation was the date the judgment of dissociation was rendered more than six years earlier, namely, September 27, 2006, the defendants owed the plaintiff approximately $3.5 million in interest.

On appeal, the defendants claim that, because the plaintiff wrongfully dissociated from the partnership, he was not entitled to interest on his buyout award under § 34-362 (b). Instead, the defendants claim, the plaintiff was entitled to interest under § 34-362 (h), which specifically applies to wrongful dissociation, only once each of the scheduled payments to the plaintiff became due and owing. In response, the plaintiff argues that the trial court properly applied the interest provision in § 34-362 (b) because that subsection applies to all dissociated partners, regardless of whether they wrongfully dissociated. Alternatively, the plaintiff argues that, even if the trial court should have applied § 34-362 (h), he nevertheless was entitled to interest dating back to the date of dissociation because he estab-

lished that it would not be an undue hardship for the partnership to pay his buyout award before the expiration of the partnership's term. See General Statutes § 34-362 (h). We agree with the defendants and conclude that § 34-362 (h) controls and that the plaintiff was not entitled to interest on his buyout award until the four scheduled payments of that award became due and owing.

Whether the plaintiff was entitled to interest on his buyout award under § 34-362 "raises a question of statutory construction, which is a [question] of law, over which we exercise plenary review." (Internal quotation marks omitted.) *Fairchild Heights, Inc.* v. *Amaro*, supra, 293 Conn. 8. We interpret § 34-362 according to the same principles of statutory construction set forth in part I of this opinion.

We begin our analysis with the applicable language of § 34-362, which sets forth two alternative procedures for valuing and buying out a dissociated partner's interest in a partnership. Subsection (b) of § 34-362 provides in relevant part that a dissociated partner's interest in a partnership should be valued at "the amount that would have been distributable to the dissociating partner . . . if, on the date of dissociation, the assets of the partnership were sold . . . and the partnership were wound up as of that date. . . ." Subsection (b) of § 34-362 further provides that "[i]nterest must be paid from the date of dissociation to the date of payment" of the buyout award. Under subsection (b), a dissociated partner is entitled to immediate payment of his buyout award. See Rev. Unif. Partnership Act of 1997, § 701, comment (9), supra, 6 U.L.A. (Pt. 1) 178.

Subsection (h) of § 34-362, on the other hand, provides for a deferred payment to a partner whose dissociation was wrongful.[12] If a partner wrongfully dissociates from a partnership of a definite term, the partner "is not entitled to payment of any portion of the buyout price until the expiration of the term . . . *unless* the partner establishes to the satisfaction of the court that earlier payment will not cause undue hardship to the business of the partnership." (Emphasis added.) General Statutes § 34-362 (h). Subsection (h) of § 34-362 further provides that "[a] deferred payment must be adequately secured and bear interest."

To determine which provision of § 34-362 controls in the present case, we rely on the "well-settled principle of construction that specific terms covering the given subject matter will prevail over general language of the same . . . statute which might otherwise prove controlling. . . . Where there are two provisions in a statute, one of which is general and designed to apply to cases generally, and the other is particular and relates to only one case or subject within the scope of a general provision, then the particular provision must prevail; and if both cannot apply, the particular provision will

be treated as an exception to the general provision." (Internal quotation marks omitted.) *Tomlinson* v. *Tomlinson*, 305 Conn. 539, 552–53, 46 A.3d 112 (2012).

In light of this principle, we conclude that § 34-362 (h), not § 34-362 (b), controls whether the plaintiff is entitled to interest on his buyout award. It is clear that subsection (b) is designed to apply to cases generally, because it refers to "dissociated partner[s]" generally, without distinguishing between partners that have dissociated wrongfully and rightfully. General Statutes § 34-362 (b). In contrast, subsection (h) is particular and relates only to cases in which a partner "wrongfully dissociates . . . ." General Statutes § 34-362 (h). In the present case, it is undisputed that the plaintiff wrongfully dissociated from the partnership. See footnote 9 of this opinion. Accordingly, § 34-362 (h) controls. The trial court properly applied subsection (h) initially, determining that its exception applied because making immediate payment would not cause undue hardship to the partnership, but then referred back to subsection (b) to determine whether the plaintiff was entitled to interest on his buyout award. Instead, the trial court should have applied the provision in subsection (h) pertaining to interest on a wrongfully dissociating partner's buyout award.

Having concluded that § 34-362 (h) controls, we next must determine when interest begins to accrue on a wrongfully dissociating partner's buyout award under that provision. Section 34-362 (h) provides that "[a] deferred payment must be adequately secured and bear interest" but is silent as to when interest begins to accrue on such a buyout award. Reading subsection (h) in the context of the other subsections of § 34-362 does not clarify when the drafters of the RUPA intended interest to begin accruing on a deferred payment under subsection (h). Whereas subsection (b) of § 34-362 specifically provides that interest accrues on a rightfully dissociating partner's buyout award "from the date of dissociation to the date of payment," subsection (h) does not include that same language, which suggests that interest does *not* accrue from the date of dissociation on awards to wrongfully dissociating partners under subsection (h). See, e.g., *Marchesi* v. *Board of Selectmen*, 309 Conn. 608, 618, 72 A.3d 394 (2013) ("[w]hen a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed" [internal quotation marks omitted]); see also General Statutes § 34-362 (i) (referencing "accrued interest" for immediate payments under subsection [b], but not for deferred payments under subsection [h]). On the other hand, subsection (f) of § 34-362 provides in relevant part that, when a partnership is authorized to make a deferred payment pursuant to subsection (h), "the partnership may tender a written offer to pay the

amount it estimates to be the buyout price *and accrued interest* . . . ." (Emphasis added.) If a partnership's settlement offer to a wrongfully dissociating partner under subsection (f) must include not only the buyout price but also "accrued interest," that suggests that interest begins to accrue on a deferred payment *before* the partnership is required to make the payment. The language in subsection (h) regarding interest accruing on deferred payments is therefore susceptible to more than one reasonable interpretation. Accordingly, consistent with § 1-2z, we turn to extratextual sources to interpret the statute.

The legislative history surrounding the enactment of § 34-362, and the partnership act generally, is minimal, and there is no legislative history that clarifies the legislature's intent regarding the interest provision of § 34-362 (h). We therefore turn to other extratextual sources to ascertain the meaning of the statute, specifically, the commentary to the RUPA and relevant scholarly articles. The drafters of the RUPA apparently created subsection (h) of § 34-362 in order "to protect the non-breaching partners [of a term partnership] from an unexpected loss of capital." D. Weidner & J. Larson, "The Revised Uniform Partnership Act: The Reporters' Overview," 49 Bus. Law. 1, 11 (1993). Although the commentary to the RUPA does not specifically address the interest provision of § 34-362 (h), it does address why interest is awarded to rightfully dissociating partners. In general, interest accrues on a rightfully dissociating partner's award from the date of dissociation to the date of payment under § 34-362 (b) "to compensate the dissociating partner for the use of his interest in the firm." Rev. Unif. Partnership Act of 1997, § 701, comment (3), supra, 6 U.L.A. (Pt. 1) 177.

In light of this commentary, we conclude that the most reasonable interpretation of § 34-362 (h) is that interest accrues on a payment to a wrongfully dissociating partner from the date the payment is due and owing, rather than from the date of dissociation. We believe that the rationale for awarding interest generally under subsection (b) of § 34-362, namely, compensating rightfully dissociating partners, simply does not apply in the context of payments to wrongfully dissociating partners under subsection (h). A partner who has wrongfully dissociated is not entitled to compensation for the use of his interest in the partnership because it was the partner's *own wrongful conduct* that is causing the partnership to buy him out. The idea that a wrongfully dissociating partner forfeits certain rights as a consequence of his wrongful conduct is reflected in the many provisions of the partnership act that treat wrongfully dissociating partners differently from rightfully dissociating partners. See, e.g., General Statutes § 34-373 (b) (affording to rightfully dissociating partners but not to wrongfully dissociating partners right to waive winding-up process and to continue dissolved partnership); Gen-

eral Statutes § 34-374 (a) (barring wrongfully dissociating partners from participating in winding-up process); General Statutes § 34-376 (a) (barring wrongfully dissociating partners from filing statement of dissolution); cf. General Statutes § 34-356 (c) (holding wrongfully dissociating partner liable for damages caused by dissociation).

Moreover, this interpretation of § 34-362 (h) is consistent with common-law principles governing awards of interest generally. In contexts other than partnerships and the RUPA, we consistently have held that interest ordinarily begins to accrue only when the underlying obligation becomes due and owing. See, e.g., *Cecio Bros.*, *Inc.* v. *Feldmann*, 161 Conn. 265, 274, 287 A.2d 374 (1971) ("[i]nterest ordinarily begins to run from the time when the money is due and payable"); see also *Belisle* v. *Berkshire Ice Co.*, 98 Conn. 689, 696, 120 A. 599 (1923); *Loomis* v. *Gillett*, 75 Conn. 298, 300–301, 53 A. 581 (1902).

Applying this interpretation of § 34-362 (h) to the present case, we conclude that the plaintiff is not entitled to interest on his buyout award under § 34-362 (h) until the award becomes due and owing. Thus, the trial court improperly awarded the plaintiff interest on his buyout award from the date of dissociation. On remand, the trial court should apply § 34-362 (h) and determine whether the plaintiff is entitled only to a deferred payment or an immediate payment if the partnership's term has expired, or whether there again will be no undue hardship to the business of the partnership. In either case, interest will begin to accrue only once the payment or payments become due and owing.

### III

Finally, we turn to the defendants' claim regarding attorney's fees. The defendants claim that the trial court, in valuing the partnership, should have treated their attorney's fees as a liability of the partnership, which would have reduced the partnership's value and, in turn, reduced the plaintiff's buyout award. The defendants reason that their attorney's fees constituted a liability because the partnership agreement included a provision indemnifying each partner from "any and all liability, loss, expense, or damage . . . including attorney's fees . . . incurred by any of them" in the course of conducting the business of the partnership. Thus, under the terms of this indemnity provision, the defendants claim that the partnership was obligated to repay the defendant partners for their attorney's fees. We cannot review the defendants' claim because the record is inadequate for review.

The following additional facts regarding the defendants' attorney's fees are pertinent to this issue. Neither the defendant partners nor the partnership actually paid for the attorney's fees they incurred in the present case

or in *Brennan I*. Instead, the fees were paid for by the estate of Richard Aiello. The defendants claimed that it was necessary to secure funding from the estate of Richard Aiello because the plaintiff would not consent to having the partnership indemnify the defendants for their attorney's fees. In 2005, the defendants agreed in writing to reimburse the estate of Richard Aiello for the attorney's fees. The defendants passed a "resolution" reaffirming that obligation to the estate of Richard Aiello in 2012.

From the outset of the present case, the defendants have claimed that the plaintiff is obligated to pay the attorney's fees they incurred in the present case and in *Brennan I* under two theories.[13] First, the defendants claimed that their attorney's fees constituted damages under § 34-356 (c)[14] that had been caused by the plaintiff's wrongful dissociation and that should be offset against the plaintiff's buyout award pursuant to § 34-362 (c).[15] The defendants argued in their pretrial memorandum of law and posttrial brief that § 34-356 does not limit what types of costs can be deemed "damages," and, therefore, their attorney's fees should be offset against the plaintiff's award because the plaintiff's dissociation caused the defendants to incur those fees when the plaintiff instituted the present action and the action in *Brennan I*.

The defendants' second theory at trial was that they could recover attorney's fees from the plaintiff according to the terms of an indemnity provision contained in the partnership agreement. At trial, the defendants entered into evidence the partnership agreement, the agreement with the estate of Richard Aiello, which obligated the defendants to reimburse the estate for the attorney's fees, and the resolution reaffirming that obligation. The partnership agreement included an indemnity clause providing that "[t]he partnership shall . . . indemnify and save harmless each [p]artner from and against any and all liability, loss, expense, or damage incurred or sustained by reason of any act or omission in the conduct of the business of the partnership . . . including attorney's fees . . . incurred by any of them in connection with the defense of any action to which any of them may be made a party by reason of his activities on behalf of the partnership." The defendants argued that the partnership had incurred a debt defending the two actions brought by the plaintiff and that, under the indemnity provision in the partnership agreement, they were therefore "entitled to be indemnified" by the plaintiff for these expenses.

In pursuing these two theories at trial, the defendants presented evidence regarding how the partnership had treated their attorney's fees for accounting purposes. One of the coadministrators of the estate of Richard Aiello testified that the defendants believed that the plaintiff was liable to the partnership for the attorney's

fees as damages under §§ 34-356 and 34-362. As such, the coadministrator explained, the partnership had treated the defendants' attorney's fees as "a receivable" from the plaintiff and an "offsetting liability" owed to the estate of Richard Aiello. The coadministrator explained that, if the trial court concluded that the plaintiff was *not* liable to the partnership for the attorney's fees, then the fees would become a liability of the partnership because the partnership would be obligated to reimburse the estate of Richard Aiello for the fees. Accordingly, when the parties were presenting evidence regarding the partnership's value, the defendants stipulated to the fact that, as of 2006 and 2009, the partnership had only two liabilities: a mortgage for the commercial property the partnership owned and lease deposits that the partnership owed to tenants.

After an eleven day trial, the trial court concluded that the defendants were not entitled to attorney's fees from the plaintiff. With respect to the defendants' first theory, the trial court determined that, as a matter of law, attorney's fees are not recoverable under § 34-356 (c) or § 34-362 (c) and that, even if they were, the defendants had failed to establish that the plaintiff's wrongful dissociation had caused the damages that they sought. With respect to the second theory, the court never made any findings of fact regarding the indemnity provision of the partnership agreement or legal conclusions as to whether the defendants were entitled to attorney's fees under that provision. Instead, the trial court addressed only the effect of the defendants' agreement with the estate of Richard Aiello regarding the attorney's fees and the defendants' subsequent resolution to repay the estate. The trial court found that neither the defendants' agreement with the estate nor the resolution required *the plaintiff* to pay the defendants' attorney's fees because the plaintiff was not a party to either the agreement or the resolution.

After the trial court issued its memorandum of decision, the defendants filed a motion for articulation and/or clarification as to how it arrived at its ultimate valuation of the partnership. Specifically, the defendants claimed that "[i]t [was] unclear from the decision what values the court ascribed to the assets and liabilities [of the partnership]" and requested the court to "articulate findings as to the value of the real estate assets . . . and the partnership's liabilities" so that the defendants could determine whether the court properly applied the statutorily prescribed formula for valuing the partnership. The plaintiff opposed the defendants' motion, and the court ultimately denied the motion. The defendants subsequently filed a motion for review of the trial court's denial of their motion for articulation and/or clarification, and this court granted the motion for review but denied the relief requested therein.

On appeal, the defendants challenge only the trial

court's ruling with respect to their second theory for recovering attorney's fees. Specifically, the defendants claim that the trial court, in valuing the partnership, should have treated the attorney's fees as a liability of the partnership because the indemnity provision in the partnership agreement required the partnership to indemnify the partners for the fees.[16]

"It is well established that [i]t is the appellant's burden to provide an adequate record for review." (Internal quotation marks omitted.) *Schoonmaker* v. *Lawrence Brunoli, Inc.*, 265 Conn. 210, 232, 828 A.2d 64 (2003). "Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court . . . any decision made by us respecting [the defendants' claims] would be entirely speculative." (Internal quotation marks omitted.) *Deutsche Bank National Trust Co.* v. *Angle*, 284 Conn. 322, 327, 933 A.2d 1143 (2007). "It is, therefore, the responsibility of the appellant to move for an articulation or rectification of the record where the trial court has failed to state the basis of a decision . . . to clarify the legal basis of a ruling . . . or to ask the trial judge to rule on an overlooked matter. . . . In the absence of any such attempts, we decline to review this issue." (Internal quotation marks omitted.) *Schoonmaker* v. *Lawrence Brunoli, Inc.*, supra, 232.

We conclude that the record is inadequate to review the defendants' claim through no fault of the defendants. In its memorandum of decision, the trial court did not make any findings of fact with respect to the indemnity provision of the partnership agreement. Without findings of fact regarding whether the partnership is obligated to pay the defendants' attorney's fees under the indemnity provision, we cannot review the defendants' claim that the trial court should have treated their attorney's fees as a liability of the partnership. Nevertheless, the defendants made sufficient attempts to obtain an adequate record for review in their motion for articulation and/or clarification, which was denied, and their motion for review, which this court granted but ultimately denied the relief sought therein. Accordingly, under the unique circumstances of this case, we remand the case for further proceedings. At the hearing to value the partnership and the plaintiff's interest therein as of August 29, 2009; see part I of this opinion; the trial court should also determine whether the defendants are entitled to attorney's fees under the indemnification provision of the partnership agreement and, thus, whether the attorney's fees constitute a liability of the partnership.[17]

The judgment in Docket No. SC 19116 is reversed as to the valuation of the partnership and the plaintiff's interest therein, and as to the award of interest under § 34-362, and the case is remanded for further proceed-

ings to determine the value of the partnership and the plaintiff's interest therein as of August 29, 2009, to determine whether the plaintiff is entitled to a deferred or immediate payment of the newly determined buyout award, and to determine whether the attorney's fees incurred by the defendants constitute a liability of the partnership; the judgment in Docket No. SC 19116 is affirmed in all other respects, and the appeal in Docket No. SC 19150 is dismissed.

In this opinion ROGERS, C. J., and PALMER, ESPINOSA, ROBINSON and VERTEFEUILLE, Js., concurred.

[1] The coadministrators of Richard Aiello's estate are Leonard DiNardo, Peter DiNardo, Salvatore K. DiNardo and David Lehn. We hereinafter refer to the partnership, Alexander Aiello, Mihaly and the coadministrators of the estate of Richard Aiello collectively as the defendants throughout this opinion. We refer to Alexander Aiello, Mihaly and the coadministrators collectively as the defendant partners.

[2] General Statutes § 34-355 (5) provides for a "partner's expulsion by judicial determination because . . . (C) the partner engaged in conduct relating to the partnership business which makes it not reasonably practicable to carry on the business in partnership with the partner . . . ."

[3] We note that the plaintiff also filed his separate appeal with the Appellate Court, and we transferred that appeal to this court and consolidated it with the defendants' appeal for oral argument.

[4] The dissenting justice claims that we place undue emphasis on the term "expulsion" in § 34-355 (5). In fact, however, we are merely giving effect to every word in § 34-355 (5) instead of reading the term "expulsion" out of the statute, as the dissent would do.

The other grounds for dissociation enumerated in § 34-355 reveal the significance of the term "expulsion" in § 34-355 (5). Of the ten events that can result in a partner's dissociation under § 34-355, only three include the term "expulsion" as the triggering event of a partner's dissociation. See General Statutes § 34-355 (3) through (5). In contrast, the other subdivisions of the statute provide that a partner is dissociated as a matter of law upon the moment that a certain event occurs, regardless of the partner's participation in the partnership. See, e.g., General Statutes § 34-355 (6) (A) (dissociation occurs upon partner "[b]ecoming a debtor in bankruptcy"); General Statutes § 34-355 (7) (B) (dissociation occurs upon "the appointment of a guardian or general conservator for the partner"). This distinction indicates that a partner's "expulsion" is necessary for dissociation under some of the subdivisions of § 34-355 but not others. See, e.g., *Marchesi* v. *Board of Selectmen*, 309 Conn. 608, 618, 72 A.3d 394 (2013) ("[w]hen a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed" [internal quotation marks omitted]).

Section 34-355 (7) (C) is particularly illuminating, given that dissociation under that subparagraph, like under § 34-355 (5), involves a judicial determination. Section 34-355 provides in relevant part that "[a] partner is dissociated from a partnership upon . . . (7) . . . (C) *a judicial determination* that the partner has . . . become incapable of performing the partner's duties under the partnership agreement . . . ." (Emphasis added.) The absence of the term "expulsion" from § 34-355 (7) indicates that a partner is dissociated under that provision at the time of the judicial determination, regardless of whether he is expelled from the partnership. The difference in the language of § 34-355 (5) and § 34-355 (7) (C) supports the conclusion that the drafters of the RUPA included the word "expulsion" in § 34-355 (5) for a reason, and that dissociation under § 34-355 (5) does not occur until the partner is expelled from the partnership. See, e.g., *Marchesi* v. *Board of Selectmen*, supra, 309 Conn. 618.

[5] See also C. Tait & E. Prescott, Connecticut Appellate Practice and Procedure (4th Ed. 2014) § 4-4:1.1, p. 292.

[6] Practice Book § 71-6 provides that, generally, an automatic stay shall continue until the time for the filing of a motion for reconsideration with this court has expired, or, if such a motion is filed, until twenty days after the disposition of that motion, or, if such motion is granted, until the appeal

is finally determined.

Because our review of the record reveals that the parties in *Brennan I* did not file a motion for reconsideration, and the time to file such a motion would have expired ten days after *Brennan I* was officially decided; see Practice Book § 71-5; the judgment of dissociation would have become effective on August 29, 2009.

[7] Likewise, the dissenting justice's claims regarding the automatic stay are unavailing. The dissenting justice first claims that we should not consider the effect of the automatic stay on the date of dissociation because the defendants waived that issue by failing to raise it in *Brennan I*. Before addressing the merits of this claim, we note that the plaintiff did not make this argument at trial when litigating this issue, and he does not make it on appeal.

The dissenting justice's claim rests on a deep misunderstanding of the procedural posture of this case. The date of dissociation, and the automatic stay's effect on that date, is relevant only insofar as § 34-362 (b) requires a dissociated partner's interest in a partnership to be valued as of "the date of dissociation" so that it can be bought out by the partnership. In *Brennan I*, this court determined, inter alia, that the trial court correctly concluded that it did not have equitable authority to initiate the valuation and buyout process of the plaintiff and that "the legislature has intended for the dissociated partner to control the timing and procedure by which the valuation process occurs." *Brennan* v. *Brennan Associates*, supra, 293 Conn. 92. Accordingly, the plaintiff brought the present action after *Brennan I* to have the partnership and his interest therein valued as of the date of dissociation and bought out by the partnership. Thus, the valuation process and, therefore, the date of dissociation were not relevant to the parties until the plaintiff brought the present action after *Brennan I*. Indeed, we expressly decided in *Brennan I* that it would have been *inappropriate* for the trial court to have valued the plaintiff's interest in the partnership as of the date of dissociation in the same action in which the plaintiff was dissociated. See id., 92–93. Thus, contrary to the dissenting justice's claim, the defendants could not have raised in *Brennan I* the issue of the effect of the automatic stay on the date of dissociation.

The dissenting justice further claims that, even if the issue of the date of dissociation is properly before this court, the automatic stay did not apply to the judgment of dissociation rendered against the plaintiff insofar as dissociation is an injunctive remedy. Again, this is a novel claim that the plaintiff did not raise at trial or on appeal. The parties certainly could not have been confused as to whether the automatic stay was in effect after the defendants moved to partially terminate the stay while *Brennan I* was pending and the trial court denied their motion.

In any event, even if we assume that the dissenting justice's premise that injunctions are not subject to an automatic stay is true, the dissenting justice offers no authority to suggest that dissociation under § 34-355 is a form of injunctive relief. The case on which the dissenting justice primarily relies, namely, *Tomasso Bros.*, *Inc.* v. *October Twenty-Four*, *Inc.*, 230 Conn. 641, 646 A.2d 133 (1994), explains that a request for injunctive relief requires the trial court to exercise its discretion in balancing "the injury complained of with that which will result from interference by injunction." (Internal quotation marks omitted.) Id., 648. In contrast, in a dissociation action, the trial court must determine, as a matter of fact, whether statutorily enumerated grounds exist for terminating an individual's status as a partner. Dissociation under the partnership act therefore is not analogous to an injunction that is ordered as an equitable remedy.

Thus, the dissenting justice's claim that the automatic stay did not apply to the plaintiff's dissociation is without merit. Given that the effect of the automatic stay is dispositive in the present case, we need not address the dissenting justice's other arguments as to why the date of dissociation, for valuation purposes, is the date the trial court rendered the judgment of dissociation against the plaintiff.

[8] As we previously discussed, the plaintiff also filed a separate appeal from the trial court's judgment. Because we reverse the judgment of the trial court with respect to the date on which the plaintiff's interest in the partnership should have been valued and remand the case for a determination of value as of August 29, 2009, we cannot address the plaintiff's claim regarding offer of compromise interest because it is contingent on the trial court's determination of value on remand.

[9] It is undisputed that the plaintiff's dissociation from the partnership was wrongful. Section 34-356 (b) (2) (B) provides that the term wrongful

dissociation encompasses "exp[ulsion] by judicial determination under subdivision (5) of section 34-355," which is the provision under which the plaintiff was expelled.

[10] Specifically, in its December 11, 2012 memorandum of decision, the trial court ordered the partnership to pay the plaintiff according to the following schedule: $2.5 million on March 1, 2013; $2 million on January 1, 2014; $1.5 million on January 1, 2015; and $937,600 on January 1, 2016.

[11] Eight percent is the interest rate statutorily prescribed by General Statutes § 37-1 (a). The trial court properly relied on § 37-1 (a) in determining the interest rate because § 34-362 does not specify an interest rate, and General Statutes § 34-304 (b) provides that, "[i]f an obligation to pay interest arises under sections 34-300 to 34-399, inclusive, and the rate is not specified, the rate is that specified in section 37-1."

[12] Section 34-356 sets forth the grounds for wrongful dissociation.

[13] The defendants also sought attorney's fees from the plaintiff for his alleged breach of fiduciary duty, but that claim is not at issue in this appeal.

[14] General Statutes § 34-356 (c) provides in relevant part: "A partner who wrongfully dissociates is liable to the partnership and to the other partners for damages caused by the dissociation. . . ."

[15] General Statutes § 34-362 (c) provides in relevant part: "Damages for wrongful dissociation under subsection (b) of section 34-356, and all other amounts owing, whether or not presently due, from the dissociated partner to the partnership, must be offset against the buyout price. . . ."

[16] The plaintiff and the dissenting justice contend that the defendants' claim regarding attorney's fees was unpreserved. Specifically, they argue that, at trial, the defendants never raised their indemnification claim for attorney's fees but only sought attorney's fees as statutory damages under §§ 34-356 and 34-362. The record reveals, however, that the defendants, in fact, did preserve their claim. The defendants pleaded their indemnification claim for attorney's fees as a counterclaim, raised it briefly in their pretrial memorandum of law, devoted three pages of their posttrial brief to discussing it, and raised it in their proposed findings of fact for the trial court. Moreover, the *plaintiff* clearly believed that the defendants had raised the indemnification claim for attorney's fees because he responded to it in his posttrial reply brief. Thus, we reject the plaintiff's and the dissenting justice's contention that the defendants failed to preserve their indemnification claim for attorney's fees.

[17] We recognize that we could remand this matter to the trial court for an articulation pursuant to Practice Book § 61-10, with respect to whether the partnership is obligated to pay the defendants' attorney's fees. Because, however, we are remanding this case for further proceedings so that the partnership and the plaintiff's interest therein can be valued as of August 29, 2009, we believe that the most prudent course of action is to have the trial court decide the issue of attorney's fees at the same time as it determines the value of the plaintiff's interest in the partnership.